732 F.2d 664
 Eric BROCKELL, Appellant,
v.
Alma NORTON, Bill Turner, Ronald Storey, Joyce B. Hall, O.V.
Adams, Ed L. Wallace, Bonner Ford, Individually and in their
own official capacity as Mayor and City Council of the City
of Marvell, and the City of Marvell, Appellees.
 No. 83-1370.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 9, 1984.
Decided April 25, 1984.
 
 L.T. Simes II, West Helena, Ark., for appellant.
 Gill, Skokos, Simpson, Buford & Owen, P.A., Little Rock, Ark., for appellees.
 Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BRIGHT, Circuit Judge.
 HEANEY, Circuit Judge.
 
 
 1
 For the second time we are asked to consider the constitutionality of the discharge of Eric Brockell from his job as a radio operator-dispatcher for the Marvell, Arkansas, police department. On appeal from the first trial in this case, we decided that the discharge did not infringe upon any property or liberty interest held by Brockell and thus did not violate the due process protections of the fourteenth amendment to the United States Constitution. Brockell v. Norton, 688 F.2d 588, 590-592 (8th Cir.1982). We remanded, however, for the district court to determine whether the City and its mayor and councilors violated Brockell's first amendment right of free speech by dismissing him because he reported the alleged misconduct of a Marvell police officer to a person outside the department's chain of command. Id. at 592-594. The court on remand held that the City's application of its chain-of-command policy to discharge Brockell did not violate his first amendment rights. Brockell appeals. We reverse and remand with directions that the district court order Brockell's reinstatement and award him appropriate backpay from the City.
 
 
 2
 The facts as developed at the first trial of this matter are set forth in detail in our prior opinion. Id. at 589-590. In brief, Brockell worked as a radio operator-dispatcher for the Marvell police force since July 1, 1978. In February of 1980, he learned that part-time officer Buddy Monroe possessed a document which Brockell reasonably and in good faith believed was a copy of the certification test to be given to Monroe and others by the Arkansas State Law Enforcement Standards Commission. Brockell reported this information to Marvell Chief of Police Bill Erickson. On February 29, 1980, approximately ten days after his report to Chief Erickson, Brockell made an anonymous phone call to Captain James Virton of the Pine Bluff Police Department. Captain Virton was in charge of conducting the training course and administering the certification test to officers in the region which included Marvell.
 
 
 3
 Mayor Alma Norton and the Marvell City Council learned of Brockell's report to Captain Virton on March 11, 1980. The council voted to terminate Brockell during an executive session that same day. The City, its mayor, and its councilors have always asserted that they discharged Brockell because he violated the police department's chain of command, which required department business to be brought first to the chief of police and then, if not properly resolved, to the mayor. On June 12, 1980, Brockell sued the City and its mayor and council members, individually and in their official capacities, for deprivation of his constitutional rights under color of law in violation of 42 U.S.C. Sec. 1983 (Supp. V 1981). The district court entered judgment dismissing Brockell's action on July 15, 1981. We remanded the case on September 22, 1982.
 
 
 4
 On remand, the district court heard additional testimony and received additional evidence directed solely to Brockell's first amendment contention. The court reaffirmed the facts recounted above, but made further specific findings. It found: (1) that Brockell believed that Chief Erickson had taken no action on his report of alleged misconduct when he made the anonymous call to Captain Virton; (2) that the mayor and city council first learned of the alleged misconduct after Brockell's anonymous call; (3) that Brockell made the call on his own, without instructions to do so by Chief Erickson; (4) that Brockell either knew or should have known of the department's chain-of-command policy; (5) that Marvell is a small community of approximately 1700 persons; (6) that Brockell was personally acquainted with the mayor and city councilors, and could approach them with unresolved problems in the police department; (7) that Brockell's allegations of illegal activity by Mayor Norton in a "kickback" scheme were unfounded; (8) that Brockell was terminated because he reported his suspicions about Monroe to Captain Virton without first exhausting the method of resolving department problems within the city, i.e., he violated the chain-of-command policy; and (9) that the mayor did not participate in the council vote to discharge Brockell. Tr. at 117-121 (February 15, 1983).
 
 
 5
 From these facts, the court concluded that the first amendment did not protect Brockell's breach of the department's chain of command. It specifically labeled as "unwarranted" Brockell's assumption that further appeals through the chain of command would have been fruitless since the next link in the chain was Mayor Norton, a person whom Brockell believed would protect Monroe based on her past conduct. Id. at 122. The court held:
 
 
 6
 In any event, when I balance all the factors considered or set out in the Eighth Circuit opinion in this case, I conclude it is more important that the City be given an opportunity in situations such as this to resolve its own problems than it is to turn over the function of City Government to the chaotic and disruptive methods chosen by each particular employee of the City to be reporting matters which they think are wrong with the City, and in particular a matter that Mr. Brockell considered to be illegal. In this case, it was a matter he should have taken up through the processes of City Government, in particular the Mayor or City Council members before [he] went outside City Government.
 
 
 7
 Id. at 123.
 
 
 8
 The court then held that the mayor and individual councilors carried no malice toward Brockell and discharged him in a "good faith" attempt to enforce the chain-of-command policy. Id. at 123-124. In closing, the court declared that the individual defendants had not waived a defense of good faith immunity and that the pleadings were amended to conform to all proof presented. Id. at 125-126.
 
 
 9
 As we noted in our first opinion concerning this case, Brockell's first amendment contention turns entirely upon whether his report to Captain Virton was protected conduct under the balancing test established in Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). Brockell v. Norton, supra, 688 F.2d at 593. The City and individual defendants admit that this report was the sole reason for discharging Brockell. Cf. Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977) (a plaintiff normally must show that conduct protected by the first amendment was a "substantial" or "motivating" factor in the defendant's adverse decision, shifting the burden of persuasion to the defendant to show that its decision would have been the same even absent that protected conduct). The Pickering balance generally involves weighing the interest of a public employee in commenting upon matters of public concern against the public employer's interest in promoting the efficiency of government services. Pickering v. Board of Education, supra, 391 U.S. at 568, 88 S.Ct. at 1734. Although this balancing approach relies heavily upon the facts of each individual case, the resolution of the Pickering test is a legal determination. See Connick v. Myers, --- U.S. ----, ---- n. 7, 103 S.Ct. 1684, 1690 n. 7, 75 L.Ed.2d 708, 720 n. 7 (1983); Patteson v. Johnson, 721 F.2d 228, 232 (8th Cir.1983); Hughes v. Whitmer, 714 F.2d 1407, 1418 n. 11 (8th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984).
 
 
 10
 We earlier recognized that the public importance of Brockell's report to Captain Virton, his mode of communication, his prior attempt to resolve the matter with Chief Erickson, the period between his report to Chief Erickson and his call to Captain Virton, and the unlikelihood of proper resolution of the matter if kept in the chain of command were factors important to the Pickering balance in this case. Brockell v. Norton, supra, 688 F.2d at 593. The district court considered each of these factors, at least implicitly, but decided that the City's interest in enforcing the chain-of-command policy in its police department outweighed the cumulation of factors favoring Brockell's conduct. Although we agree with the district court's factual assessment of the circumstances surrounding Brockell's actions, we cannot agree that Brockell's reasons for partially breaching the chain of command were "unwarranted." Insofar as this statement by the district court was simply a shorthand method of saying that the Pickering balance tipped in favor of the City and the individual defendants, we disagree as a matter of law. Even were this a purely factual matter, however, we would hold the court's finding that Brockell's assumptions were "unwarranted" to be clearly erroneous. See Hoefelman v. Conservation Commission, 718 F.2d 281, 285 (8th Cir.1983) (clearly erroneous conclusion is based upon an appellate court's definite and firm conviction that a mistake has occurred below); Fed.R.Civ.P. 52(a).
 
 
 11
 A police department has a significant governmental interest in developing efficiency, loyalty, discipline, esprit de corps, and uniformity in its operations. Hughes v. Whitmer, supra, 714 F.2d at 1419. We cannot simply decide in the abstract, however, that a chain-of-command policy designed to protect this interest will always take precedence over the interest of a public employee in open communication. Rather, we must look to the particular circumstances of each case to determine the importance of enforcing the chain of command against an employee whose speech breaches that policy.
 
 
 12
 In the instant case, the Marvell police department employed perhaps half-a-dozen persons, including officers, and was run very informally. The chain-of-command policy was not written in any manual or handbook generally available to department employees. Mayor Norton testified that there was very little harmony in the department and that it was operated with very little efficiency. Instead of justifying the strict enforcement of the chain of command in Brockell's case, the reasons for this disharmony and inefficiency are key to why Brockell partially ignored that chain in reporting Monroe's alleged improper conduct to Captain Virton.
 
 
 13
 Chief Erickson repeatedly testified that he had no authority over Monroe because of the preferred treatment given to Monroe by the mayor. The record reflects at least one instance in which Monroe went directly to Mayor Norton with questions regarding the enforcement of local traffic laws rather than to the first link in the department's chain of command, Chief Erickson. The mayor also apparently showed Monroe preference in the assignment of department equipment, although he was only a part-time officer. Furthermore, Chief Erickson testified on cross-examination at the second trial that the reason he could not help Brockell in the matter presently at issue was because it involved Monroe. The mayor has never denied showing preference to Monroe, and counsel for the City and the individual defendants attempted to justify such preferential treatment at oral argument because Monroe was a good employee who did what he was told. Although we find no error in the district court's finding that the record did not establish any illegal conduct by Mayor Norton, we are firmly convinced that all members of the Marvell police department were given a clear message from the mayor's office that Monroe could do no wrong.
 
 
 14
 In our view, given this relationship between Monroe and Mayor Norton, Brockell maintained a legitimate doubt whether reports to the mayor regarding Monroe's alleged misconduct would be properly resolved; indeed, the record can be read to show that Brockell carried reasonable concerns about reprisals by Mayor Norton should he rock the boat containing Monroe. His desire to avoid such reprisals is evident in his making the call to Captain Virton anonymously. Thus, Brockell's partial breach of the chain of command in this case was not simply a whimsical disregard for authority.
 
 
 15
 The facts before us approach more closely the plight of a whistle-blower who wishes to report the misconduct of her or his immediate supervisor. Citing our decision in the first appeal of this case, another panel of our Court stated, "[A]n employee's first amendment interest is entitled to more weight where he is acting as a whistle-blower exposing government corruption. Brockell v. Norton, 688 F.2d 588, 593 (8th Cir.1982); * * *." Hughes v. Whitmer, supra, 714 F.2d at 1423 (citation omitted). In a similar case, involving a plaintiff's breach of the chain of command in a county probation office, we stated:
 
 
 16
 [The defendant's] additional reason for requesting [the plaintiff's] resignation, that she had violated an office rule by delivering her April 11 letter regarding probation office business to [Assistant County Attorney] Bray without review of the letter by [Chief Probation Officer] Wickes, cannot be sustained. The enforcement of such a rule against an employee seeking to criticize the very superior empowered to review office correspondence would impermissibly chill first amendment rights.
 
 
 17
 Atcherson v. Siebenmann, 605 F.2d 1058, 1063 n. 5 (8th Cir.1979).
 
 
 18
 Although Brockell's report to Captain Virton involved alleged misconduct by Monroe and not Mayor Norton directly, the mayor's prior preferential treatment of Monroe gives Brockell's action the character of whistle-blowing.
 
 
 19
 Viewing the City's interest in the chain of command in this context, and considering the content, manner, timing, and place of Brockell's conduct, we think that conduct was protected by the first amendment from the enforcement of Marvell's chain-of-command rule. The public importance of Brockell's report cannot be questioned. The public has a vital interest in the integrity of those commissioned to enforce the law. See Connick v. Myers, supra, --- U.S. at ---- - ----, ----, 103 S.Ct. at 1689-1690, 1693, 75 L.Ed.2d at 719-720, 724 (communications of clear public concern may merit a greater degree of first amendment protection). We also believe that this private call to an authority positioned to make a quick investigation and resolution of the alleged improprieties was less disruptive to the City and its police department than other forms of communication which Brockell might have chosen. See Atcherson v. Siebenmann, supra, 605 F.2d at 1063 n. 6. In addition, Brockell did initially follow the chain of command by reporting to Chief Erickson and waiting over a week before taking further action. In such a small police department and community, this period of apparent inaction was a clear reflection on the amount of response Brockell could expect from the established channels. Finally, we find extremely important that Brockell went to Captain Virton with his report, the most logical person to approach outside Marvell regarding possible misconduct on a test he was commissioned to conduct. Cf. id. (assistant county attorney was not an improper recipient of allegations of misconduct in the county probation office).
 
 
 20
 For these reasons, we reverse the district court and hold that the City and the individual defendants violated Brockell's first amendment rights by participating in his discharge. Although we now hold in retrospect and on balance that the mayor and council members acted improperly in this matter, we accept the district court's finding that they acted in a reasonable, good faith belief that they could legally dismiss Brockell for his partial disregard of the chain of command. We find that the individual defendants thus possessed a qualified immunity from a damages action under section 1983, and will not hold them personally liable for any monetary relief to Brockell. See Scheuer v. Rhodes, 416 U.S. 232, 241-242, 245-249, 94 S.Ct. 1683, 1688-1689, 1691-1692, 40 L.Ed.2d 90 (1974). Instead, we remand to the district court to order the reinstatement of Brockell to his former or a substantially similar position and to award him appropriate backpay to be paid by the City. See Owen v. City of Independence, 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980); Monell v. Department of Social Services, 436 U.S. 658, 690 & n. 54, 98 S.Ct. 2018, 2035 & n. 54, 56 L.Ed.2d 611 (1978).
 
 
 21
 Reversed and remanded.