680 F.Supp. 1339 (1988)
Lawrence PERRY, and Terrance Benham, Plaintiffs,
v.
CITY OF KINLOCH, Missouri, Bernard L. Turner, Individually and in his capacity as Mayor, Steven Haynes, Individually and in his capacity as Chief of Police, Willie Ealy, Individually and in his capacity as a Sergeant with the Kinloch Police Department, and Leroy Noah, Johnnie Mae Bryant, William Whitley, and Beverly Noldon, Individually and in their capacities as members of the Board of Aldermen, Defendants.
No. 85-1541 C (2).
United States District Court, E.D. Missouri, E.D.
January 15, 1988.
Richard A. Barry, III, Rothman, Sokol & Adler, St. Louis, Mo., for plaintiffs.
Lawrence Perry, pro se.
Lloyd J. Jordan, Bussey and Jordan, St. Louis, Mo., for defendants.

MEMORANDUM
FILIPPINE, District Judge.
This matter is before the Court for a decision on the merits. The evidence was presented to a jury which then answered special interrogatories under Fed.R.Civ.P. 49. The Court adopts this entire memorandum and order as its findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52 and 49.
Plaintiffs' claims arise from their discharge as police officers with the City of Kinloch after a dispute concerning the reporting of an automobile accident. Plaintiffs sued the City of Kinloch, the Mayor, Chief of Police, a sergeant in the Kinloch Police Department, and the Kinloch Board of Aldermen. Sergeant Willie Ealy and Alderman William Whitley were dismissed *1340 as defendants at trial. The city officials are sued in their individual and official capacities. Plaintiffs initially asserted that their discharges violated their first amendment and fourteenth amendment rights. They withdrew the fourteenth amendment claims during the jury instruction conference.

I.
At approximately midnight on January 17, 1985, plaintiff Benham was dispatched to investigate an automobile accident reported by William Whitley, a member of the Board of Aldermen. Whitley stated that he had parked his car in front of a friend's house and when he returned to the car, it had been damaged.
Benham filed his police report on January 18, 1985.
Owner of vehicle # 2, identified as:
 Whitley, William B/M
 5532 King
 Kinloch, Mo. 63140 HPN 524-2651
stated he was at a friend's residence and when he return to his vehicle he found the front end damaged. Driver stated he not heard or seen anything.
Investigation at scene revealed the front end of vehicle # 2 to be moved approximately 7" to the left. Vehicle was apparently struck on the right front corner. Further investigation revealed no tire marks or skid marks on lawn of residence that vehicle was parked in front of. No parts of either vehicle could be located at scene, nor could any paint transfer be detected on vehicle # 2.
A utility pole, # K1-4, located immediately north of the victim's vehicle, displayed no signs of damage, nor did a tree, located approximately 15' east of vehicle and 5' south of utility pole.
Although the diagram accompanying the report shows a utility pole directly in front of and very close to the front passenger corner of the automobile, Benham testified at trial that the utility pole was five feet in front and fifteen feet to the side of the car. Benham testified that the damage to the front passenger corner could not have happened as Whitley described because of the position of the utility pole. This inference, however, was questionable from the limited evidence before the Court.
About five days after Benham filed his report, he discovered that another report gave a less detailed account of the automobile accident.
The owner of vehicle # 2 states that he parked his vehicle in front of 5700 ... at about 11:30 P.M. and upon his return to same at about 12:20 A.M. he observed the vehicle damage. No witnesses found.
Vehicle # 2 is owned by William Whitley of 5532 King, Kinloch, Mo. 63140.
The second report was prepared by Willie Ealy, a sergeant in the Kinloch Police Department, who was on duty the night of the accident and saw the damaged car. Ealy's report is dated January 18, 1985, but Ealy testified that it was written sometime between January 18 and January 21.
Ealy prepared his report in response to questions by the Police Chief. The Chief apparently found Benham's report in the Chief's basket and asked Ealy if he reviewed the report in accordance with the usual procedure. The report had somehow gone to the Chief without Ealy's prior review, and Chief Haynes told Ealy to look at the report to see if he saw anything wrong. Ealy testified that Benham's report contained speculative narration concerning the lack of paint transfer and debris. Further, it was unusual to attach a full page diagram in this type of accident. The diagram inaccurately placed both the driveway, and the car, which was too far to the right so that it was half off the street.
Ealy discussed the accident with Benham, who stated that he would not "do [Alderman Whitley] any justice" unless Whitley publicly apologized for cursing Benham at the time of the investigation. Although both Benham and Whitley testified that they did not argue at the scene, Ealy's testimony is corroborated by a report submitted by Benham, plaintiff's exhibit 10, which quotes Ealy as telling Benham that Whitley was sorry for the way he had treated Benham at the time of the *1341 investigation. These facts are further corroborated by the testimony of the records room officer, Michael Abernathy, that Benham said he was angry at defendant Whitley for cursing at Benham. The Court credits Ealy's testimony.
Michael Abernathy, who is now with the Pagedale Police Department, was in charge of the Kinloch records room at the time the reports relevant to this case were prepared. Abernathy was a credible witness for defendants, although he was disciplined by Chief Haynes several times during his employment with Kinloch. Abernathy testified that it is ordinary procedure to review police reports and not uncommon for police reports to be "kicked-back" because of errors. Final reports are mailed to the Missouri Highway Patrol.
Abernathy stated that Benham's report was irregular because it contained a full page diagram and because it contained speculative narration about the car being shifted seven inches to the left and having "apparently" been struck on the right corner.
Abernathy was confronted by plaintiffs several times about the reports. Benham threatened to hurt Abernathy if he sided with the Chief, and Perry repeatedly contacted Abernathy to urge him to join sides with plaintiffs in their dispute with the Chief. Plaintiffs urged Abernathy to mail the Ealy report to the Missouri Highway Patrol. When Abernathy refused, Benham mailed the Ealy report, with which Benham disagreed, to the Missouri Highway Patrol.
Once plaintiffs discovered the Ealy report they prepared yet another report, plaintiff's exhibit 10, which listed the incident as "forgery/Filing a False Report/Tampering with a Public Record" and listed Abernathy as the person who discovered the crime. The report chronicles the events leading to the two reports and implicates Chief Haynes and Alderman Whitley in a scheme to substitute the Ealy report for the Benham report. Plaintiff's exhibit 10 was signed by plaintiffs, Abernathy, and patrolman James Jones.
Both Jones and Abernathy testified at trial that the report incorrectly attributed actions and statements to them. Abernathy testified that he was shown plaintiffs exhibit 10 without a first page. He signed without reading it when plaintiffs told him that he would have to go before the grand jury if he did not sign and that he would be implicated along with the Chief. Abernathy denied that he made a statement attributed to him in the report. Abernathy also objected to the part of the report which makes it appear that he mailed the Ealy report when, in fact, Benham mailed the report to the Missouri Highway Patrol.
Patrolman Jones similarly testified that he signed plaintiffs' exhibit 10 without reading it. Although the report lists Jones as a witness to a statement by the Chief relating to the Benham report, Jones denies that he heard such a statement.
Plaintiffs eventually went to the St. Louis County Prosecuting Attorney with their report. A subsequent investigation produced no evidence of insurance fraud. The investigating St. Louis County Police Officer, Don Hearst, did testify at trial, however, that the Chief appeared to assist Alderman Whitley in placing his car at the scene of the accident when later questioned by Hearst. Plaintiffs were aware of the Kinloch Police Department's chain of command rules which included the Chief, Police Commissioner, Mayor, and Board of Aldermen, but at no time consulted the Chief or any other person in the chain of command.
After Abernathy saw Benham and Perry at the St. Louis County Prosecutor's Office, Abernathy reported everything he knew about the investigation Perry and Benham were conducting to Chief Haynes. Haynes contacted Perry and Benham and then held a hearing with the officers who were mentioned in plaintiffs' exhibit 10 Dawson, Abernathy, and Jones. Abernathy and Jones were upset about the contents of plaintiffs' report and submitted incident reports to the Chief that contradicted plaintiffs' report. Chief Haynes also referred to an incident report by Dawson, but it was not offered into evidence.
Plaintiffs were subsequently suspended by Chief Haynes for breaking the chain of command; willfully or negligently making *1342 false, misleading or inaccurate statements; discussing department matters with unauthorized people; and revealing documents to people outside the department without authority. Plaintiffs were discharged after a vote of the Board of Aldermen in which Whitley did not vote.

II.
The constitutional protection of a government employee's speech is determined by balancing the employee's interest in speaking on a matter of public concern and the state's interest in promoting the efficiency of the public services it performs through its employees. Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734-35, 20 L.Ed.2d 811 (1968). The Supreme Court refined this test in Connick v. Myers, 461 U.S. 138, 146-47, 103 S.Ct. 1684, 1689-90, 75 L.Ed.2d 708 (1982), by limiting the constitutional protection given to speech that does not touch upon a matter of public concern.
When the plaintiffs engaged in speech relating to the corruption of public officials, they spoke on a matter of public concern. Brockell v. Norton, 732 F.2d 664, 668 (8th Cir.1984); Egger v. Phillips, 710 F.2d 292, 319 (7th Cir.1983) (integrity of federal law enforcement official a matter of public concern), cert. denied, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). This type of whistle-blowing speech is entitled to great weight in the Pickering balance. Hughes v. Whitmer, 714 F.2d 1407, 1423 (8th Cir.1983), cert. denied, 465 U.S. 1023, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984).
Competing with the employees' interest is Kinloch's interest in an efficient police department. Cities have an important interest in maintaining discipline and espirit de corps. Id. at 1419. A chain of command rule designed to protect that interest counts in the Pickering balance although its existence is not outcome determinative in every case. Brockell, 732 F.2d at 667.
This case was submitted to the jury on special interrogatories in accordance with Roberts v. Van Buren Public School, 773 F.2d 949, 954-55 (8th Cir.1985). The ultimate question of the protected nature of plaintiffs' speech is a question of law for the Court to be determined in light of the jury's findings. Id.
The jury found by a preponderance of the evidence that the allegations of Benham and Perry to the St. Louis County Prosecuting Attorney were a substantial or motivating factor in their suspension and termination. The jury further found that plaintiffs would not have been suspended or discharged in the absence of their allegations to the St. Louis County Prosecuting Attorney.
Having set out the jury's causation findings, the Court should now turn to examine plaintiffs' speech in light of the following factors in the Pickering balance:
(1) the need for harmony in the office or workplace;
(2) whether the government's responsibilities require a close working relationship to exist between the plaintiff and co-workers when the speech in question has caused or could cause a relationship to deteriorate;
(3) the time, manner and place of speech;
(4) the context in which the dispute arose;
(5) the degree of public interest in the speech;
(6) whether the speech impeded the employee's ability to perform his or her duties.
Bowman v. Pulaski County Special School District, 723 F.2d 640, 644 (8th Cir.1983).
It is well settled that police departments' special responsibilities require discipline and harmony among police officers. Hughes v. Whitmer, 714 F.2d at 1419. The Kinloch Police Department employed only about twelve officers at the time of the actions at issue in this case, so that plaintiffs' investigation had department-wide impact. The jury, in response to the interrogatories, found that plaintiffs' speech created disharmony in the Kinloch Police Department.
The Court finds the time, manner, and place factor compelling in this case. While plaintiffs' suspicions regarding Whitley's *1343 automobile cannot be characterized as reckless, it is clear that Benham and Perry conducted a campaign against the Chief and Alderman Whitley. Plaintiffs' motives were as much personal as they were civic-minded. Perry, who had nothing to do with the underlying automobile accident, clearly had a dispute with the Chief and urged on Benham, who was arguing with Whitley. Despite initial reservations, Benham agreed to carry the matter forward in total disregard of the chain of command. As part of this campaign, plaintiffs used threats and intentionally distorted the facts to add to the appearance of impropriety and the weight of their evidence. Under these circumstances, the Court finds that the City's interest in an efficient police department outweighs plaintiffs' interests in the particular speech involved here. Accordingly, the Court finds the City and its officials justified in discharging plaintiffs.
Defendants request an award of costs and attorney's fees. A district court may, in its discretion, award attorney's fees to a prevailing defendant, "but should not do so unless it finds that the plaintiff's claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." Bowers v. Kraft Food Corp., 606 F.2d 816, 818 (8th Cir.1979); Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422, 98 S.Ct. 694, 700-701, 54 L.Ed.2d 648 (1978); Hensley v. Eckert, 461 U.S. 424, 429 n. 2, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983); American Family Life Assurance Co. v. Teasdale, 733 F.2d 559, 569-70 (8th Cir. 1984). Furthermore, in making its determination, the Court must not "engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." Id. at 421-22.
The Court must determine then whether in its discretion plaintiff's action was so frivolous and without foundation that defendant is entitled to an award of attorneys' fees.
This Court finds that although defendants prevailed in this action, they do not meet the stringent standard required in Christiansburg Garment Co. for awarding of attorney's fees.

JUDGMENT
In accordance with the Memorandum filed this date and incorporated herein,
IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants City of Kinloch, Missouri, Bernard L. Turner, Steven Haynes, Willie Ealy, Leroy Noah, Johnnie Mae Bryant, William Whitley, and Beverly Noldon shall have judgment against plaintiffs Lawrence Perry and Terrance Benham, at plaintiffs' costs, and that plaintiffs' claims for relief against the defendants are DISMISSED with prejudice.
IT IS FURTHER ORDERED that defendants' request for attorney's fees is DENIED.