**Gregory RUFF, Russell Wood, and Linda Sanders, Plaintiffs,**

v.

**CITY OF LEAVENWORTH, KANSAS; and Lee Doehring, Defendants.**

**No. 93–2243–JWL.**

United States District Court, D. Kansas.

May 19, 1994.

G. Gordon Atcheson, Blake & Uhlig, P.A., Kansas City, KS, for plaintiffs.

Robert D. Beall, Davis, Beall, McGuire & Thompson, Chtd., Leavenworth, KS, Matthew W. Tills, Kansas City, MO, for defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiffs Gregory Ruff and Russell Wood, police officers employed by the defendant City of Leavenworth ("the City"), were disciplined and placed on probation by the City's chief of police for drafting and placing two newspaper advertisements that indorsed non-incumbent candidates seeking election to the Leavenworth City Commission.[1] Plaintiffs Ruff and Wood perceived the reprimand as a violation of their First Amendment right of free speech, and subsequently brought this action pursuant to 42 U.S.C. § 1983 in an attempt to secure declaratory and injunctive relief. A third plaintiff, Linda Sanders, also a member of the police department, alleges that the City's policies and actions have had a "chilling" effect on her own First Amendment freedoms and deter her from engaging in protected speech. All plaintiffs allege that the City's personnel policy regarding an employee's "political activity" is unconstitutional as applied to them and is both vague and overbroad on its face. The City of Leavenworth disagrees and maintains that its policy is constitutional and has been applied in a manner such as to preserve the First Amendment freedoms of plaintiffs.

This case comes before the court on plaintiffs' motion for summary judgment declaring the City's actions towards Officers Ruff and Wood and its ban on "political activity" unconstitutional (Doc. # 33), and on defendants' cross-motion for summary judgment declaring the City's policies constitutional (Doc. # 36). For the reasons set forth below, the

---

1. Officer Wood's reprimand was also due, in part, to oral statements he made regarding the City election which were subsequently published in a local newspaper.

court denies plaintiffs' motion for summary judgment (Doc. # 33) and denies defendants' cross-motion for summary judgment (Doc. # 36). Trial to the court will commence Tuesday, June 14, 1984.

## I. Factual Background

The following facts are uncontroverted for purposes of this motion.[2] Officer Ruff joined the police force in 1984 as a patrolman, and was later promoted to sergeant and then lieutenant, a rank he has held since 1989. Officer Wood joined the police force in 1990, also as a patrolman, but resigned as of September of 1992, for reasons which do not bear on the outcome of this case. Plaintiff Linda Sanders has been an employee of the Leavenworth Police Department since 1973, and presently holds the position of evidence custodian. As a civilian employee of the department, Ms. Sanders lacks the authority to make arrests or carry a firearm in the course of her duties. Ms. Sanders does not wear a uniform and her contact with the public is limited to responding to questions about evidence.

On March 23, 1993, the Leavenworth City Commission voted unanimously against bringing the City under the Kansas Public Employer Employee Relations Act (PEERA), K.S.A. 75-4321, et seq.[3] About twenty-five police officers, including plaintiff Wood attended the commission meeting. The Fraternal Order of Police Lodge No. 19 ("the FOP") sent a representative to this meeting urging the commissioners to bring the City under PEERA.[4]

Immediately following the meeting, Officer Wood, who was at that time President of the FOP, stated in substance that he and other officers intended to support Phil Urban and David Atkins, two non-incumbent candidates seeking election to the commission and would oppose the sitting commissioners who had voted against PEERA coverage. His remarks were reported in the March 24, 1993, edition of the Leavenworth Times, a general circulation newspaper, as follows: " 'We plan to support Phil Urban and David Atkins and we plan to campaign against the commissioners who voted against this,' Wood said."

In February or March of 1993, FOP representatives met with commission candidates, usually for breakfast or dinner at a local restaurant. The purpose of the meetings was to learn the candidates' positions and views on issues the FOP thought important. The candidates were not asked to make promises, nor were they promised an endorsement.

The FOP purchased display advertisements in the March 31 edition of the Leavenworth Times and the March 31 edition of the Chronicle Shopper, another general circulation newspaper, asking voters to cast their ballots for Urban and Atkins in the commission election. Officer Ruff drafted the text and Officer Wood edited the draft. The advertisements were not shown to or their contents discussed with the candidates or any of their campaign workers in advance of being published. They were not prepared during either of the officer's working hours or using any City materials.

After reviewing the advertisements and Officer Wood's March 23 remark as reported

---

**2.** The court notes that defendants have not fully complied with D.Kan.Rule 206(c). Technically, the court could disregard those facts which are not referenced to the record, however, the court will, by examining the entire record and the evidence presented by both sides, undertake to determine which facts are properly controverted for purposes of this motion. The court notes, however, that the failure to comply with the rule has exacerbated the task of resolving these motions. Were it not for the important constitutional issues and matters of public policy presented, the court would have been far less likely to have scoured the record to ascertain its status.

**3.** PEERA provides that local units of government may choose to come under its coverage. K.S.A.

75-4321(c) (1989). Workers are then permitted to form "employee organizations" that meet and confer with representatives of the government over terms and conditions of employment. This process is intended to culminate in a memorandum of agreement, setting forth those terms and conditions. The process is akin to private sector collective bargaining.

**4.** The FOP Lodge No. 19 is a fraternal organization whose members are police officers below the rank of captain employed by the City of Leavenworth. The City does not recognize the organization for the purposes of developing terms and conditions of employment or departmental policy.

in the Leavenworth times, Police Chief Lemoine Doehring began a professional standards investigation of Officer Ruff and Officer Wood, and various other officers of the FOP, for possible violation of the City's personnel policies. It was Chief Doehring's conclusion that the officers had violated the City's policy banning certain "political activity." As a result, Chief Doehring placed letters of reprimand in the personnel files of both officers and put them on probationary status.

The personnel policy in effect at the time of the chief's investigation stated in pertinent part as follows:

*III–3. Code of Ethics*

*A. Political Activity:* ... Employees are permitted to join political organizations, civic associations or betterment groups or other organizations that do not endorse candidates for municipal office. Employees are not permitted to engage in any political activity involving the election of candidates for any City office, however, may [sic] participate in informational meetings involving candidates for City elective office. Employees will not visibly endorse on their person or City property candidates for any elective office while on duty.

The letter of reprimand to Officer Wood, dated May 4, 1993, stated in essence that it was Chief Doehring's conclusion that Officer Wood's verbal statements published in the Leavenworth Times and his participation in placement of the advertisements violated Personnel Rule, III–3, Subsection A, expressly prohibiting "employees of the City of Leavenworth from engaging in any political activity involving the election of candidates for any city office." In the letter of reprimand to Officer Ruff, Chief Doehring stated he had found the officer to be in violation of the same personnel rule for his participation in advertisements that specifically endorsed candidates for the City Commission. Both officers were instructed to refrain from "this type of conduct" in the future and informed that any subsequent violation of personnel or department rules would invoke disciplinary action in the form of lengthy suspension without pay or termination of employment.

In both letters of reprimand, Chief Doehring further stated:

Your actions and political activity seriously undermined that delicate check and balance system, and significantly damaged the credibility of the candidates, yourself and the City of Leavenworth employees. This is evident by the citizens comments in the Leavenworth Times newspaper. It has proven to be a [sic] very divisive within this department and the employee body of the City. It is my expectation you will refrain from this type of conduct in the future.

Plaintiff Sanders is aware of the discipline imposed on Officers Ruff and Wood and has reviewed the applicable City personnel policies. She states that based on this information she would not express her personal opinion for or against any candidate who might seek election to the City Commission for fear of being disciplined.

The City has since revised its policy, effective January 1, 1994, to read:

*III–E. Code of Ethics*

*A. Political Activity* .... Employees are permitted to join political organizations, civic organizations, or associations, or other organizations, but are not permitted to personally, individually, or as a representative of said organizations, publicly endorse, solicit or collect campaign funds, or voice public support at public meetings or through the media or by other distributed materials, campaigning for or against candidates for any City elective office. However, employees may participate in informational meetings involving candidates for City elective offices. the purpose of this prohibition is to prohibit political activities by City employee in City elections of City elective offices.

Employees shall not visibly endorse on their person or City property candidates for any elective office while on duty.

## II. Summary Judgment Standard

When considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party. *Langley v. Adams Coun-*

*ty, Colorado,* 987 F.2d 1473, 1476 (10th Cir. 1993). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anthony v. United States,* 987 F.2d 670, 672 (10th Cir.1993). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmovant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511; *Tersiner v. Union Pacific R.R.,* 740 F.Supp. 1519, 1522–23 (D.Kan. 1990). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555.

### III. Arguments of the Parties

Plaintiffs argue that the discipline imposed on Officers Ruff and Wood must be lifted in its entirety. They argue that the City's justifications for reprimanding the officers for their activity are insufficient to justify the resulting intrusion on their protected speech. They further argue that Linda Sanders has suffered an impermissible impairment of her First Amendment rights as a result of the policy and the discipline imposed on the officers. She allegedly fears similar discipline if she were to express opinions about candidates running for the commission. Moreover, plaintiffs argue, the City's personnel policy, both the old and the revised, is uncon-

stitutionally overbroad in that it reaches political comment voiced "wholly distinct and independent from a candidate's campaign machinery." They argue that the policy casts too wide a prohibition and that its chilling effect is manifest.[5] Finally, plaintiffs argue that the policy is unconstitutionally vague.

Defendants contend simply that *Broadrick v. State of Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), controls the disposition of this case and that the United States Supreme Court has already held that policies like the one in force in Leavenworth are constitutionally valid. They argue that the policy is neither overbroad nor vague under the auspices of *Broadrick,* and that it is not unconstitutional as applied in that the City of Leavenworth has a compelling interest in its enforcement.

### IV. Discussion

■ As a preliminary matter, the court notes that there are two policies which are purportedly at issue in this case; the personnel policy under which Officers Ruff and Wood were disciplined and the revised policy effective January 1, 1994. Plaintiffs move the court to declare the portions of both the City's former and current policies prohibiting employees from engaging in political activity with respect to municipal elections to be unconstitutional and void, and to enjoin the City from enforcing the second paragraph of the current "political activity" policy. They ask, further, that the court rescind the discipline imposed on Officers Ruff and Wood pursuant to the old policy. The court finds that the constitutionality of the new policy is properly before the court due to an amendment of the original pleadings, but that the issue of the facial validity of the old policy is moot due to the fact it has been rescinded by the City. The court must address, however, whether the reprimand of Officers Ruff and Wood under the old policy was constitutionally permissible. As is more fully set forth below, the court finds that genuine issues of material fact preclude the court from determining whether the Officers were reprimand-

---

**5.** Plaintiffs generally agree that the City may limit municipal employees' participation in the formal campaigns of commission candidates. They also do not challenge the City's right to limit discussion of commission elections in the workplace or during work time.

ed for protected activity as a matter of law, and that it defers determination of the facial validity of the City's revised policy until a trial is heard on all issues.

### A. Balancing of Interests

It is now settled law that an employee does not abandon his or her First Amendment rights simply by agreeing to work for a public entity. A city may not discipline an "employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." *Rankin v. McPherson*, 483 U.S. 378, 382, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987); *see also Connick v. Myers*, 461 U.S. 138, 143–44, 103 S.Ct. 1684, 1688, 75 L.Ed.2d 708 (1983) (noting the Court's now longstanding rejection of Justice Holmes' comment that a police officer "may have a constitutional right to talk politics, but he has no constitutional right to be a policeman."). At the same time, however, the realm of protected speech for public employees is much narrower than that for the general public. *See Connick*, 461 U.S. at 144, 103 S.Ct. at 1688; *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). "[T]he government has an interest in regulating the conduct and the speech of its employees that differs significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers*, 413 U.S. 548, 564, 93 S.Ct. 2880, 2890, 37 L.Ed.2d 796 (1973).

As a starting point, the court recognizes that the United States Supreme Court has analyzed the right of federal and state governments to constitutionally restrict the partisan political activity of their employees in *United States Civil Service Commission v. National Association of Letter Carriers*, 413 U.S. at 564, 93 S.Ct. at 2890 (1973) and its companion case, *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). In *Letter Carriers*, the Supreme Court upheld the validity of the Hatch Political Activity Act, 5 U.S.C.A §§ 7321–7327 (1980) ("Hatch Act"), finding that federal employees could constitutionally be prohibited from taking formal positions in political parties, from undertaking substantial roles in partisan political campaigns and from running for office on partisan political tickets. *Letter Carriers*, 413 U.S. at 565, 93 S.Ct. at 2890. In *Broadrick*, the Court upheld similar restrictions on Oklahoma state employees under an Oklahoma statute regulating political activity. *Broadrick*, 413 U.S. at 616–17, 93 S.Ct. at 2918.

Significantly, *Letter Carriers* relied on *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), in determining whether particular conduct or speech may be regulated and found that "[t]he problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the [government], as an employer, in promoting the efficiency of the public services it performs through its employees." *Letter Carriers*, 413 U.S. at 564, 93 S.Ct. at 2890. Application of the *Pickering* balancing test has not been limited to purported restrictions on "political activity," but rather has been applied to various situations in which a public employer has tried to restrict the speech of its employees.[6] *See, e.g., Flanagan v. Munger,*

---

**6.** Plaintiffs apply *Pickering* in conjunction with *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Under the *Pickering/Connick* test, whether a public employer has violated an employee's right to freedom of speech depends first upon whether the employee's speech touches upon a matter of public concern and then upon the balance struck between the interests of the employee and the City. *Flanagan v. Munger*, 890 F.2d 1557, 1562 (10th Cir.1989). The court finds a balancing of interests is required here; however, the court is wary of overemphasizing cases which have applied the *Connick/Pickering* test in areas other than public employee speech on political activity in light of

clear Supreme Court precedent on the issue. The court notes, in any event, that it would have little difficulty finding that the speech at issue addresses a matter of public concern under the *Connick/Pickering* test, and, thus, would apply the same *Pickering* balancing if it followed precisely plaintiffs' framing of the issue. *See Buckley v. Valeo*, 424 U.S. 1, 14, 96 S.Ct. 612, 632, 46 L.Ed.2d 659 (1976) ("Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution."); *Connick*, 461 U.S. at 146, 103 S.Ct. at 1689; *Koch v. City of Hutchinson*, 814 F.2d 1489, 1498

890 F.2d 1557, 1562 (10th Cir.1989) (*Pickering* test is Supreme Court test for determining whether a public employer has violated an employee's First Amendment right to engage in speech at work or related to work). In light of this precedent, the court concludes that in order to determine whether the City violated the First Amendment rights of Officers Ruff and Wood, it must weigh the interest of the officers in the speech at issue against the interest of the City in promoting the efficiency and efficacy of its law enforcement services.[7]

In *Letter Carriers* and *Broadrick* the Supreme Court recognized that a government can have an interest in ensuring that its employees "enforce the law ... without bias or favoritism for or against any political party or group or members thereof." *Letter Carriers*, 413 U.S. at 565, 93 S.Ct. at 2890; *see also Brockell v. Norton*, 732 F.2d 664, 668 (8th Cir.1984) ("[t]he public has a vital interest in the integrity of those commissioned to enforce the law"). In addition, it found that certain political activities may be curtailed in order to avoid the appearance of impropriety, so that a government may maintain public confidence in its ability to provide efficient and effective services. *Letter Carriers*, 413 U.S. at 565. Certainly the City of Leavenworth could have an interest in the fair and impartial enforcement of its laws and in maintaining the integrity of its police department.[8]

Apart from its interest in a fair and equal administration of the law, the City could also have an interest in maintaining internal harmony among co-workers and in maintaining the regular operation of its police department. *Pickering*, 391 U.S. at 570–573, 88 S.Ct. at 1735–37. The Tenth Circuit has recognized that a police department has a "heightened" interest in maintaining stability and harmony among its employees. *Davis v. City of Elk City*, 951 F.2d 1258, 1992 WL 2878, at *2 (10th Cir.1992); *Koch*, 847 F.2d at 1452 n. 22 (heightened governmental interest exists in maintaining harmony among employees in the law enforcement context, where "[mutual] trust and respect among [employees] ... are particularly important" and "[t]he need for confidentiality cannot be gainsaid."); *see also Waters v. Chaffin*, 684 F.2d 833, 836, 839 (11th Cir.1982); *Hughes v. Whitmer*, 714 F.2d 1407, 1418–19 (8th Cir. 1983) (highway patrol, "more so than the typical government employer," has an interest in controlling its officers' speech), *cert. denied*, 465 U.S. 1023, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984).

At the same time, however, an individual and the public has a very strong interest in commenting and hearing comments regarding elections which directly and powerfully affect their communities. *Buckley v. Valeo*, 424 U.S. 1, 48, 96 S.Ct. 612, 648, 46 L.Ed.2d 659 (1976) (political speech rests at the

---

(10th Cir.1987) (speech which evaluates performance of elected officials is of public interest), *aff'd on rehearing*, 847 F.2d 1436 (10th Cir.1988), *cert. denied*, 488 U.S. 909, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988); *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir.1983) (speech enabling public to make informed decisions about government operation is protected).

7. Whether speech is protected is a question of law for the court to determine. *Connick*, 461 U.S. at 148 n. 7, 150 n. 10, 103 S.Ct. at 1690 n. 7, 1692 n. 10. The balancing of interests required by *Pickering* is resolved by the court; the determination of whether the government's interest in restricting the speech at issue outweighs that of the individual is ultimately one of law. *Koch v. City of Hutchinson*, 847 F.2d 1436, 1441 (10th Cir.1988). In addition, the government bears the burden of demonstrating the constitutionality of its actions. *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734; *Melton v. City of Oklahoma City*, 879 F.2d 706, 713 (10th Cir.1989),

*reh'g on other grounds*, 928 F.2d 920, *cert. denied*, —— U.S. ——, 112 S.Ct. 296, 116 L.Ed.2d 241 (1991).

8. Contrary to defendant's position, although *Letter Carriers* and *Broadrick* are relevant and must be considered in determining whether the conduct and speech of Officers Ruff and Wood may be constitutionally prohibited, they are not dispositive of the issue. The court must decide based on the facts specific to this particular case whether the City's interest in integrity and efficiency outweighs plaintiffs' interest in free speech. *See Biller v. United States Merit Systems Protection Board*, 863 F.2d 1079, 1087 (2d Cir. 1988). Moreover, the policy at issue here purports to regulate a broader range of speech and conduct than was restricted in either *Broadrick* or *Letter Carriers*, and the conduct of Officers Ruff and Wood, placing an advertisement endorsing a candidate in a nonpartisan local election, was not before the Court in either case.

"core" of First Amendment); *Monitor Patriot v. Roy*, 401 U.S. 265, 272, 91 S.Ct. 621, 625, 28 L.Ed.2d 35 (1971) (First Amendment "has its fullest and most urgent application precisely to the conduct of campaigns for political office"); *Williams v. Rhodes*, 393 U.S. 23, 32, 89 S.Ct. 5, 11, 21 L.Ed.2d 24 (1968) ("Competition in ideas and governmental policies is at the core of our electoral process and of the First Amendment freedoms.").

■ In attempting to balance the potentially strong interests on either side of the *Pickering* test, the court finds that issues of fact preclude summary judgment for either plaintiffs or defendants. Unfortunately, the defendant made a less than complete showing in its summary judgment papers that it has any strong governmental interest in the restrictions imposed. Plaintiffs contend that the only interest articulated by defendants in support of the City's ban on political activity is an interest in eliminating patronage in filling municipal jobs and that the defendants have failed to produce any real evidence of a patronage problem in the past, or the threat of one in the future.[9] There is some evidence of a desire to prevent real patronage problems, but more importantly there is also some evidence of other valid interests the City may be seeking to protect. In Chief Doehring's letter of reprimand he specifically states that the ban on political activity is intended to protect both employees and candidates for election from adverse political conduct and to maintain credibility of the employee body in the community. There is supporting evidence in the record of an adverse reaction by both the community and other employees to the conduct of the officers.

■ The evidence produced by the City is scant, and its reliance on case law alone to establish the existence of compelling interests *of the City of Leavenworth* in regulating the *speech at issue here* is misplaced. However, the record as a whole, giving the requisite inferences to the City as the non-moving party on the plaintiffs' motion, establishes that there is a question of material fact as to what the City's interests are and how significant they may be. *See Melton*, 879 F.2d at 716 n. 11 (articulating government's burden of proof). Although the question of whether an employee's speech is protected is one of law, the balancing of interests required by *Pickering* is a "fact specific inquiry." *Firefighters Local 2238 v. City of Hallandale*, 922 F.2d 756, 763 (11th Cir.1991). The court simply cannot conclude on the record before it whether the City's interests in the adequacy and efficiency of its police services to the community outweighs the officers' right to comment on city elections.

### B. Overbreadth and Vagueness of Statute

■ Statutes that attempt to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society. *Broadrick*, 413 U.S. at 611–12, 93 S.Ct. at 2915–16. Thus, litigants are permitted to challenge a statute on the basis that it is "facially overbroad." *Id.* at 612, 93 S.Ct. at 2915. Such overbreadth, however, especially where conduct and not merely speech is involved, must be "substantial" in relation to the statute's "plainly legitimate sweep." *Id.* at 615, 93 S.Ct. at 2917. In order to determine whether the policy at issue here prohibits a substantial amount of protected speech and conduct, the court must again weigh the interests of the City in restricting certain political activity with that of the plaintiffs in engaging in such activity. *Letter Carriers*, 413 U.S. at 564, 93 S.Ct. at 2890. Issues of fact again predominate and the court feels constrained to defer its ruling on both the overbreadth and vagueness challenge to the revised City ban on political activity until such time as a trial on all issues has been conducted.

9. Defendant did not address specifically the balancing of interests inquiry required by *Pickering*, and indeed by *Letter Carriers*. However, plaintiff has produced a thorough record of evidence gathered through deposition testimony. The court must examine the entire record before granting summary judgment to either plaintiffs or defendants, especially in light of the stringent review requirements in First Amendment analysis.

**782**

*Conclusion*

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiffs' motion for summary judgment (Doc. # 33) is denied.

**IT IS FURTHER ORDERED** that defendants' cross-motion for summary judgment (Doc. # 36) is denied.

**IT IS FURTHER ORDERED** that this case proceed to trial to the court on June 14, 1994 at 9:30 a.m.

**IT IS SO ORDERED.**