Ramona Raye MATLOCK, Phillip A. Shepherd, Farley Gene Jordan, and Hubert Coy Gilbert, Plaintiffs,

v.

TOWN OF HARRAH, OKLAHOMA; Board of Trustees of the Town of Harrah, Oklahoma; Gary Mixon, individually and as a Trustee of the Town of Harrah; Kevin Spaeth, individually and as a Trustee of the Town of Harrah; Ben Jorski, individually and as a Trustee of the Town of Harrah; Louie Anderson, individually and as a Trustee of the Town of Harrah; and Bob J. Collier, individually, Defendants.

No. CIV–88–1097–A.

United States District Court, W.D. Oklahoma.

Aug. 24, 1989.

Larry D. Barnett, Oklahoma City, Okl., for plaintiffs.

W.D. Greenwood, Huckaby, Fleming, Frailey, Chaffin & Darrah, and Robert C. Thompson, Sherman, Pool, Thompson, Coldiron & Blankenship, Oklahoma City, Okl., for defendants.

## ORDER

ALLEY, District Judge.

This matter is before the Court on cross-motions for summary judgment, pursuant to Fed.R.Civ.P. 56. The plaintiffs are all former employees of the defendant Town of Harrah. Ramona Matlock worked as a court clerk and secretary for the police department. Phillip Shepherd and Hubert Gilbert were employed as police officers, and Farley Jordan was a firefighter. In March 1988, the Town of Harrah terminated Matlock and Shepherd, and Gilbert and Jordan resigned, in the context of general employee dissention in the police and fire departments. This lawsuit is the result.

Pursuant to 42 U.S.C. § 1983, the plaintiffs contend that their rights under the first amendment and the due process and equal protection clauses of the fourteenth amendment of the Constitution were violated by the conduct of the Town and the individual defendants. The plaintiffs also assert certain pendant claims under Oklahoma law. The Court has carefully considered the briefs and the extensive record evidence. For the reasons noted below, the plaintiffs' motion for summary judgment is DENIED, and the defendants' motion for summary judgment is GRANTED in part and DENIED in part.

## I. SUMMARY JUDGMENT STANDARD

The facts presented to the Court upon a motion for summary judgment must be construed in a light most favorable to the nonmoving party. *Board of Education v. Pico,* 457 U.S. 853, 863, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982). If there can be but one reasonable conclusion as to the material facts, summary judgment is appropriate. The Court is precluded from granting summary judgment where there is genuine dispute as to a fact which is material, that is, a fact which is relevant under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–52, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986). "Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entitlement to judgment as a matter of law." *Id.* at 248, 106 S.Ct. at 2510. Moreover, entry of judgment is mandated against a party, after adequate time for discovery and upon motion, who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## II. SECTION 1983 ISSUES

■ Before proceeding to the plaintiffs' constitutional contentions, the Court must address three threshold challenges raised by the defendants to the sufficiency of the plaintiffs' action under section 1983. First, the defendants argue that the plaintiffs' action against the individual defendants in their individual, as opposed to their official, capacities must fail because, in such an action, the requisite color of law element of section 1983 is missing. This argument borders on the frivolous. It is well-settled that where there is state action the color of law requirement of section 1983 is satisfied. *See Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 935, 102 S.Ct. 2744, 2752, 73 L.Ed.2d 482 (1982); 2 J. Cook & J. Sobieski, *Civil Rights Actions* ¶ 7.11 (1989). Given that the individual defendants here were municipal officials, state action was clearly present. *See United States v. Classic,* 313

U.S. 299, 325–26, 61 S.Ct. 1031, 1042–43, 85 L.Ed. 1368 (1941).

■ Second, the defendants contend that the Town of Harrah cannot be held liable under section 1983 for the alleged unconstitutional conduct of the individual defendants because the plaintiffs have failed to demonstrate that these defendants acted pursuant to some policy of the Town. According to the defendants, a policy under section 1983 must be widespread and persistent and, consequently, the plaintiffs' action is flawed because they allege that the individual defendants treated the plaintiffs in an unprecedented manner.

The defendants' argument is misguided. The individual defendants—trustees of the Town of Harrah during the period material here—were, without question, policymakers. Under Supreme Court precedent, officials charged with making policy for a municipality may subject the municipality to section 1983 liability based upon a single act, even if that act is never repeated. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986); 2 R. Rotunda, J. Nowak & J. Young, *Treatise on Constitutional Law: Substance and Procedure* § 19.18 (1986 & Supp.1989) [hereinafter *Constitutional Law*]. Therefore, the plaintiffs need only establish the unconstitutional conduct of the individual defendants to sustain their action against the Town of Harrah.

■ Lastly, the defendants challenge the status of Farley Jordan and Hubert Gilbert as plaintiffs under section 1983, noting that it is undisputed that both men were not terminated by the Town of Harrah but, instead, resigned from their employment. The defendants suggest that Jordan and Gilbert therefore have no foothold to object to the alleged unconstitutional disciplinary actions of the Town. On the facts of this case, the Court agrees.

There is no evidence that either Jordan or Gilbert was constructively discharged. "In a case of constructive discharge, the employer is liable for illegal conduct leading to the discharge, just as he would be in a case of formal discharge." *Kline v.*

*North Texas State University*, 782 F.2d 1229, 1234 (5th Cir.1986). In other words, there is no evidence that the Town of Harrah deliberately made the working conditions of either man so intolerable that he was forced to resign. *Bailey v. Kirk*, 777 F.2d 567, 580 (10th Cir.1985); *accord Jett v. Dallas Indep. School Dist.*, 798 F.2d 748, 757 (5th Cir.1986), *aff'd on other grounds*, —— U.S. ——, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). For example, in the instant case, the defendant Gary Mixon, who is allegedly the principal malefactor, testified that shortly before the meeting where the employment status of Jordan and Gilbert was to be examined, he had not made up his mind as to the propriety of their termination. Indeed, at that meeting, it was Jordan who asked the Board of Trustees of the Town of Harrah to resign and, when they refused to do so, he did. Accordingly, the Court finds no justification for permitting the plaintiffs Jordan and Gilbert to prosecute this section 1983 action.

■ In this regard, the plaintiffs' estoppel argument is unpersuasive. The plaintiffs argue that the defendants are estopped to assert the resignation of Jordan and Gilbert as a defense by the findings of the Oklahoma Employment Security Commission (Commission) that the two men were free of misconduct, as defined by the statute, and acted on the belief that, if they did not resign, they would soon be discharged. As support, the plaintiffs cite the Supreme Court's decision in *University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), where the Court held that the factual findings of a state agency acting in a judicial capacity are entitled to the same preclusive effect in a federal court as they would be given in a state court. 478 U.S. at 799, 106 S.Ct. at 3226.

There are at least two flaws in the plaintiffs' argument. First, it is doubtful that the Commission was acting in a judicial capacity within the meaning of *Elliott* when the findings at issue were made. *Compare* Okla.Stat.Ann.tit. 40, § 2–503(5) (West 1986) (providing for only written ob-

jection by the employer within ten days of notice of the unemployment claim) *with Elliott*, 478 U.S. at 791, n. 2, 106 S.Ct. at 3222 n. 2. (noting that the state agency hearing went on intermittently for five months and that evidence was presented through the testimony of over 100 witnesses and 150 exhibits). Second, the legal significance of these findings largely turns on a determination by this Court that Jordan and Gilbert had a constitutionally protected property interest in their jobs, meaning that they could only be dismissed for cause. Yet, as discussed below, the Court concludes that each of the plaintiffs was without such a protected interest.

Therefore, as to the plaintiffs Jordan and Gilbert's contentions under section 1983, the defendants' motion for summary judgment is GRANTED. Given this disposition, the Court elects to dismiss the pendant state claims of these defendants without prejudice. *See Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 619 n. 17, 98 L.Ed.2d 720 (1988); *United Mineworkers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

### A. Due Process

The plaintiffs contend that the defendants' conduct has infringed their due process rights under the fourteenth amendment. To make their case, the plaintiffs must demonstrate that, at times material to this litigation, they possessed a protected property or liberty interest. *See, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); *Paul v. Davis*, 424 U.S. 693, 710–11, 96 S.Ct. 1155, 1164–65, 47 L.Ed.2d 405 (1976); *Constitutional Law, supra,* § 17.2. The sufficiency of the plaintiffs' asserted property and liberty interests are addressed below.

■ *1. Property Interest:* Under the due process clause, the asserted property interest cannot be the product of speculation or wishful thinking. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, in-

stead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). In determining whether a protected property interest is at issue, courts make reference to state law. *See, e.g., Bishop v. Wood*, 426 U.S. 341, 345–47, 96 S.Ct. 2074, 2077–78, 48 L.Ed.2d 684 (1976); *Constitutional Law, supra,* § 17.5(d).

Having considered pertinent sources of state law, the Court concludes that the plaintiffs did not have a protected property interest in their jobs with the Town of Harrah. The Oklahoma statute that governs the appointment and removal of employees in municipalities structured like the Town of Harrah expressly provides that "removals, demotions, suspensions, and layoffs shall be made solely *for the good of the service."* Okla.Stat.Ann.tit. 11, § 12–114 (West 1978). On both the federal and state levels, courts construing Oklahoma law have held that the underscored language ("for the good of the service") does not confer a property interest on employees. *See Graham v. City of Oklahoma City*, 859 F.2d 142, 146 (10th Cir. 1988); *Meder v. City of Oklahoma City*, 672 F.Supp. 500, 501–02 (W.D.Okla.1987), *aff'd*, 869 F.2d 553 (10th Cir.1989); *Hall v. O'Keefe*, 617 P.2d 196, 198–200 (Okla.1980). The plaintiffs' position on this question is accordingly untenable.

In seeking to avoid this conclusion, the plaintiffs point to Ordinance 109 of the Town of Harrah. Ordinance 109 sets out a number of bases for the removal of Town employees in the classified service, including inefficiency and insubordination. There is little reason to doubt that the plaintiffs are classified employees. *See* Ordinance 109(2) (defining the classified service to exclude only employees working in part-time and temporary positions or certain positions of a policy-making nature). The gist of the plaintiffs' argument seems to be that Ordinance 109 conferred a property interest upon them by specifying grounds for removal—that is, it gave them a legitimate basis for expecting that they

would not be discharged by the Town of Harrah except for cause.

The plaintiffs' contention, however, must fail. Ordinance 109 could not give the plaintiffs a property interest expressly disallowed by state statute. *See Graham,* 859 F.2d at 146; *Umholtz v. City of Tulsa,* 565 P.2d 15, 22 (Okla.1977). Moreover, it is unlikely that this was the intent of the drafters of Ordinance 109, for they expressly noted that the provisions of the ordinance were enacted "in accordance with the provisions of Section 12–114." As noted, this controlling statute specifies that removals shall be made solely for the good of the service. In sum, on the property interest question, the plaintiffs' due process contention cannot be sustained.

■ *2. Liberty Interest:* The plaintiffs also allege that the defendants' conduct violated their due process liberty interest. Generally, to support this contention, the plaintiffs must establish that, in connection with their termination by the Town of Harrah, certain false characterizations of the plaintiffs or their conduct were published that had the effect of stigmatizing them— that is, calling into question their good name, reputation, honor, or integrity. *See, e.g., McGhee v. Draper,* 639 F.2d 639, 642–43 (10th Cir.1981); *Constitutional Law, supra,* § 17.4(d). The plaintiffs did not receive statements from the Town of Harrah specifying the reasons for their termination. Yet, the plaintiffs contend that, in purporting to terminate them for the good of the service, "Defendants were implicitly accusing Plaintiffs of poor performance or conduct." Brief in Support of Plaintiffs' Objection to Defendants' Motion for Summary Judgment, at 11 [hereinafter Plaintiffs' Response Brief].

Even assuming the existence of such an implicit accusation, the plaintiffs' liberty interest contention is completely without merit. As the Tenth Circuit has repeatedly held, public accusations focusing on such things as an employee's neglect of duties or insubordination are not sufficiently stigmatizing to implicate the due process clause. *See Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir.1988); *Asbill v. Housing*

*Authority of Choctaw Nation,* 726 F.2d 1499, 1503 (10th Cir.1984); *Sipes v. United States,* 744 F.2d 1418, 1422 (10th Cir.1984). Accordingly, the plaintiffs' liberty interest contention must fail.

*B. First Amendment*

It is settled doctrine that "[e]ven without a protected property interest, employees may not be discharged for certain constitutionally infirm reasons, including the exercise of first amendment rights." *McGhee v. Draper,* 639 F.2d at 645 n. 5; *see Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987); *Perry v. Sindermann,* 408 U.S. 593, 597–98, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972). In the instant case, the plaintiffs Matlock and Shepherd contend that they were dismissed from their jobs with the Town of Harrah because they engaged in expressive activity protected by the first amendment. To make their case, the plaintiffs must establish that (1) their speech was constitutionally protected, and (2) their speech was a substantial or a motivating factor in the Town's termination decision. *See, e.g., Conaway v. Smith,* 853 F.2d at 795; *McKinley v. City of Eloy,* 705 F.2d 1110, 1113–15 (9th Cir.1983). The first element addressing the protected nature of the speech must be determined by the courts as a matter of law; the second, requiring a motivational inquiry, generally raises issues of fact appropriate for resolution by a jury. *See Wren v. Spurlock,* 798 F.2d 1313, 1317 (10th Cir.1986), *cert. den.,* 479 U.S. 1085, 107 S.Ct. 1287, 94 L.Ed.2d 145 (1987); *Brockell v. Norton,* 732 F.2d 664, 667 (8th Cir.1984).

■ In determining whether an employee's speech is protected by the first amendment, courts must first decide whether it is related to a matter of public concern. Speech is related to a matter of public concern when it may be fairly viewed as involving political, social, or other issues of interest to the community, as opposed to individual personnel disputes and grievances. *See Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983); *Jurgensen v. Fairfax County,*

745 F.2d 868, 879 (4th Cir.1983); *Sipes v. United States,* 744 F.2d at 1423. Generally, in reaching a determination on the public concern issue, courts focus on the content, form, and context of the speech. *Connick,* 461 U.S. at 147–48, 103 S.Ct. at 1690. If the speech at issue does relate to a matter of public concern, courts must balance the interest of the public employee, as a citizen, in engaging in expressive activity on matters of public concern against the interest of the government, as an employer, in promoting efficiency in the service it performs. *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968); *see Rankin v. McPherson,* 107 S.Ct. at 2899.

Under these principles, the Court concludes that certain speech by the plaintiffs Matlock and Shepherd was protected by the first amendment. At an open meeting of the Board of Trustees of the Town of Harrah in December 1987, Matlock and Shepherd raised concerns in general terms regarding the functioning of the Town government and the alleged derelictions of certain Town officials and, with the support of Matlock, Shepherd requested the trustees to form a grievance review committee. The trustees granted Shepherd's request, forming a grievance review committee composed of the defendants Mixon and Speath. At the first meeting of this committee, Matlock and Shepherd expressed their concerns in more specific terms. Matlock alleged that the chief of police, Bob Collier, had knowingly permitted the assistant chief of police to falsify his time sheets and, after Matlock raised the matter with the town administrator, Collier failed to intervene to prevent the assistant chief of police from retaliating against her. Shepard expressed his view that Chief Collier should be terminated and certain police officers demoted.

Additionally, in February 1988, the plaintiff Matlock engaged in other expressive conduct protected by the first amendment. Specifically, Matlock reported to the district attorney's office for Oklahoma County an attempt by chief Collier to coverup an automobile accident involving a deputy sheriff for Oklahoma County and proceeded to provide records to the district attorney's office pertinent to the coverup.

On the public concern question, the Court notes that it is undisputed that "there was a lot of tension in the Town of Harrah" regarding the functioning of the Town government and, in particular, the turmoil in the police force at the time of the speech at issue. Seikel Deposition, at 18 (L. 16); *see* Thompson Deposition, at 8 (L. 15–17) (noting that at that time "employees and in some part just citizens started voicing their complaints at the public meetings"). Moreover, at least in the case of their statements at the meeting of the Board of Trustees, Matlock and Shepherd's speech was "specifically and purposefully directed to the public." *McKinley v. City of Eloy,* 705 F.2d at 1115; *see Rankin v. Indep. School Dist. No. 1-3,* 876 F.2d 838, 843 (10th Cir.1989). Further, focusing on the expressive activity of Matlock, recent language of the Tenth Circuit is instructive: "Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials, in terms of content, clearly concerns matters of public import." *Conaway v. Smith,* 853 F.2d at 796; *see Starrett v. Wadley,* 876 F.2d 808, 817 (10th Cir.1989) (holding that an employee's disclosure of the county assessor's drinking problem was a matter of public concern).

As for the *Pickering* balancing, the Court is sensitive to the fact that a police department has a "significant governmental interest in developing efficiency, loyalty, discipline, *esprit de corps,* and uniformity in its operations." *Brockell v. Norton,* 732 F.2d at 667; *see Jurgensen v. Fairfax County,* 745 F.2d at 880. However, the evidence is not persuasive that Matlock and Shepherd's speech engendered appreciably more disruption or demoralization than is likely to be produced by any expression of dissent or whistle-blowing by a public employee. *See Porter v. Califano,* 592 F.2d 770, 773–74 (5th Cir.1979). Moreover, whistle-blowing conduct, as exhibited by Matlock, is entitled to special consideration in the *Pickering* balancing. *See, e.g., Hughes v. Whitmer,* 714 F.2d 1407, 1423

**1530**

(8th Cir.1983), *cert. den. sub nom. Hughes v. Hoffman*, 465 U.S. 1023, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984). Accordingly, as delineated above, the speech of Matlock and Shepherd was protected by the first amendment.

■ The Court concludes, however, that summary judgment is inappropriate on the first amendment issue because the record evidences genuine issues of fact as to whether the protected expression of the plaintiffs Matlock and Shepherd was indeed a substantial or motivating factor underlying their respective dismissals by the Town of Harrah. In the case of Matlock, the principal reason asserted by the defendants for her discharge is her removal of city records from city hall. The records at issue related to the coverup of the automobile accident by chief of police Collier noted above. Matlock's removal of the records from city hall, therefore, was in furtherance of her protected whistle-blowing activity.

■ Yet, it may well be that, irrespective of its first amendment aspect, the Board of Trustees believed that the plaintiff Matlock's removal of the records from city hall mandated her dismissal. *See Jurgensen v. Fairfax County*, 745 F.2d at 887–89 (holding that a civil rights plaintiff's first amendment activity was not the "but for" cause of his dismissal, where he released official records to the press in violation of municipal regulations); Jorski Deposition, at 17–18 (noting that, at the time he voted in favor of terminating Matlock, he had no knowledge of her whistle-blowing motivation). As for the plaintiff Shepherd, the Court concludes that there is more than a scintilla of evidence militating against summary judgment. *Id.* (noting that at the meeting in March 1988 to consider whether to initiate disciplinary proceedings against Shepherd the Board of Trustees considered his tardiness and failure to keep accurate time records). Accordingly, the motivational inquiry should be left for resolution by the jury.

### C. Equal Protection

■ The plaintiffs contend that the Town of Harrah's disciplinary actions against them infringed their right to equal protection of the laws guaranteed by the fourteenth amendment. Allegedly, the Town treated the plaintiffs in a less favorable manner than other employees previously subject to discipline, who were provided with prior notice of the disciplinary proceeding, a show cause hearing, and written reasons for an adverse employment action.

The plaintiffs cite no authority, however, that suggests that the equal protection clause provides a basis for relief here. Indeed, the plaintiffs do not attempt to define the class purportedly burdened by the discriminatory action of the Town. At bottom, the plaintiffs' reliance on the equal protection clause appears misguided: "Equal Protection deals with legislative line drawing, procedural due process deals with the adjudication of individual claims." *Constitutional Law, supra*, § 18.2, at 317. Accordingly, the plaintiffs' equal protection contention fails.

### D. Immunity

■ The individual defendants assert that they are immune from section 1983 liability under the qualified immunity doctrine of *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Under *Harlow*, government officials performing discretionary functions are generally shielded from civil damages unless their conduct violates clearly established constitutional or statutory rights. 457 U.S. at 816–18, 102 S.Ct. at 2737–38; *see Greenberg v. Kmetko*, 840 F.2d 467, 472 (7th Cir.1988) (en banc); *Constitutional Law, supra*, § 19.29. In this regard, the individual defendants argue that their conduct in discharging the plaintiffs was objectively reasonable in light of the clearly established law at the time. Further, the defendants contend that, without more, their consultation with, and adherence to the advice of, municipal counsel regarding the terminations rendered their conduct objectively reasonable.

The position of the individual defendants on the immunity question, however, is untenable. In view of the preceding analysis, the Court need only assess the nature of first amendment doctrine as to public employees for the time period of concern here, approximately March 1988. Conducting this inquiry, the Court finds ample "analogous (but not necessarily factually identical) cases" from which the defendants could have discerned the protected nature of the plaintiffs' speech. *Melton v. City of Oklahoma City*, 879 F.2d 706, 729 & n. 36 (10th Cir.1989); *see Hughes v. Whitmer*, 714 F.2d at 1423; *McKinley v. City of Eloy*, 705 F.2d at 1114–15; *Wulf v. City of Wichita*, 644 F.Supp. 1211, 1226 (D.Kan. 1986), *aff'd*, 883 F.2d 842 (10th Cir.1989). Moreover, in *Melton, supra,* the Tenth Circuit expressly rejected the defendants' argument that consultation and the like with municipal counsel provides a sufficient ground for the assertion of an entitlement to qualified immunity. The individual defendants, therefore, cannot seek shelter under the immunity doctrine of *Harlow v. Fitzgerald.*

## III. STATE LAW ISSUES

The cross-motions for summary judgment expressly put at issue certain of the plaintiffs' state law causes of action—specifically, their causes of action for wrongful termination, invasion of privacy and false light portrayal, and intentional interference with economic opportunity—and their contention that the defendants' termination decisions are invalid under certain provisions of Oklahoma's Open Meeting Act and Municipal Code.[1] Having considered the merits, the Court concludes that these state law causes of action are barred by Oklahoma's Governmental Tort Claims Act (GTCA) and the plaintiffs' contention as to the invalidity of the defendants' termination decisions is not appropriate for summary disposition.

The plaintiffs' state law causes of action noted above sound in tort. *See Burk v. K–Mart*, 770 P.2d 24, 28–29 (Okla.1989); *Del State Bank v. Salmon*, 548 P.2d 1024, 1026–28 (Okla.1976); *Restatement 2d* Torts § 652A (1977). Consequently, whether they may be permissibly asserted against the Town of Harrah and its agents is governed by the GTCA. *See* Okla.Stat.Ann. tit. 51, 152.1(B). The plaintiffs concede that they have not satisfied the notice provisions of the statute, but argue that they have substantially complied with the statute by filing the complaint in the instant case within the requisite one year and receiving an "immediate[ ]" denial by the defendants through their answer to the complaint. Plaintiffs' Response Brief, at 16–17. The plaintiff cites no case law construing the statute, however, that suggests that the drafters of the GTCA contemplated such a result, and, indeed, the express language of the statute strongly suggests otherwise. *Id.* § 157(A). Accordingly, the plaintiffs may not proceed on these causes of action against the Town of Harrah.

Moreover, under section 153(A) of the GTCA, municipal employees are only exposed to tort liability when they are acting outside the scope of their employment. *See generally id.* § 152(9). This Court has recently discussed the "scope of employment" element of the GTCA at some length. *See Mims v. City of Waurika*, No. CIV–89–655–A, slip op. at 5–6, 1989 WL 109747 (W.D.Okla. July 6, 1989). It is enough to conclude here that the Court finds insufficient evidence of willful and waton behavior on the part of the individual defendants to deprive them of this statutory protection. *See, e.g., Neal v. Donahue*, 611 P.2d 1125, 1130 (Okla.1980).

Turning to the plaintiffs' contention as to the invalidity of the Town's termination decisions, the Court finds that the record evidence reveals genuine issues of

---

1. The plaintiffs' state law causes of action for breach of contract and detrimental reliance (that is, detrimental reliance on alleged promises of job security) were not expressly addressed by the parties in their respective arguments for summary judgment. However, in view of the Court's ruling on the property interest issue, the validity of these two causes of action is dubious at best.

material fact under the substantive law of the Open Meeting Act. In particular, a genuine dispute exists as to whether any defects in the notice of the March 17 meeting were "willful" within the meaning of section 313 and whether the defendant Mixon's pre-meeting discussions with the other members of the Board of Trustees were violative of the circumvention provision of the statute, section 306. *See* Okla.Stat. Ann. tit. 25, §§ 306, 313 (West 1987). As for the Municipal Code, even assuming a violation of its provisions regarding trustee meetings occurred, the plaintiffs have failed to demonstrate that the statute contemplates an award of the requested relief. Accordingly, as to the invalidity of the Town of Harrah's termination decisions, summary judgment is inappropriate.

## IV.  CONCLUSION

For the reasons noted, then, the plaintiffs' motion for summary judgment is DENIED and the defendants' motion for summary judgment is GRANTED in part and DENIED in part. The plaintiffs Jordan and Gilbert may *not* proceed to trial in this litigation.

It is so ordered.