**Matt DeFRIES, Plaintiff,**

v.

**TOWN OF WASHINGTON, OKLAHOMA; Armelda Moody, Individually, and as former member of the Board of Trustees of the Town of Washington; Ricky Smith, Individually, and as a former member of the Board of Trustees of the Town of Washington; Joann Davidson, Individually, and as a former member of the Board of Trustees of the Town of Washington; Larry Bonnell, Individually and as a former City Attorney of the Town of Washington, Defendants.**

No. CIV–94–1146–A.

United States District Court, W.D. Oklahoma.

Jan. 31, 1995.

F. Andrew Fugitt, Kerr Irvine Rhodes & Ables, Oklahoma City, OK, for Matt DeFries.

Peter A. Erdoes, David W. Kirk, Kirk Erdoes Watts & Contreras, Oklahoma City, OK, for Town of Washington, Okl.

Peter A. Erdoes, David W. Kirk, Kirk Erdoes Watts & Contreras, Oklahoma City, OK, for Armelda Moody, Ricky Smith, Joann Davidson, Larry Bonnell.

### ORDER

ALLEY, District Judge.

Before the Court is defendants' motion to dismiss or for summary judgment, which the Court has previously advised the parties would be decided pursuant to Rule 56, Fed. R.Civ.P. The parties have received ample opportunity to present all pertinent materials, and the motion is now ready for decision.

The following statement contains undisputed facts presented by defendants in their initial and reply briefs, as well as additional facts presented by plaintiff in his response and surreply briefs. For purposes of this Order, the Court will assume all are true.

### STATEMENT OF UNDISPUTED FACTS

Plaintiff worked for the Town of Washington, Oklahoma. He was hired in September 1991 to do water department and maintenance work. About a month later, he was given office duties and the position of deputy town clerk. This change occurred when the person who had served as town clerk resigned. The Board of Trustees passed an ordinance combining the offices of town clerk and town treasurer, and appointed the elected town treasurer to the newly created office. Plaintiff's job was expanded to include performance of the former clerk's duties. The Board could not have named plaintiff town clerk because he was not a town resident.

In May 1992, Mayor Armelda Moody became concerned about the Town's financial situation after reviewing records of water and sewer accounts and bank deposits. She called an emergency meeting of the Board of Trustees on May 11 to discuss immediate concerns about the Town's general fund balance. Plaintiff, who had been keeping account ledgers and depositing funds received from utility customers, was relieved of his duties with pay due to "bookkeeping inconsistencies". A hearing was set for May 18.

Plaintiff hired legal counsel, Andrew Fugitt. On May 14, Town Attorney Larry Bonnell sent Mr. Fugitt a copy of disciplinary procedures prepared for the Town. Mr. Bonnell also promised to inform Mr. Fugitt of the specific allegations against plaintiff and to allow time to prepare for the hearing, which was postponed. On June 1, the Board of Trustees passed an ordinance creating a formal disciplinary procedure for Town employees, Ordinance No. 1992–3. This disciplinary procedure was later invoked · for plaintiff when the parties were unsuccessful in resolving his suspension through a proposal that he be restored to a job with only field duties.

On July 27, Mr. Bonnell wrote to advise Mr. Fugitt of the specific allegations against plaintiff and to reschedule his hearing for August 3. Mr. Bonnell said an independent accountant's report showed that approximately $1,400 received by Mr. DeFries between December 1991 and May 1992 could not be referenced to a bank deposit. Mr. Fugitt had previously received a copy of the accountant's report.

Plaintiff's hearing finally took place at a special meeting of the Board of Trustees on August 11, 1992 during an executive session. Although this session was not open to the public, plaintiff and his attorney attended all proceedings except the Board's deliberations. Mr. Fugitt also made a written response to the allegations against plaintiff. At the conclusion of the executive session, the Board voted to terminate Mr. DeFries' employment. Afterwards, Mr. Bonnell sent written notice of the reasons for plaintiff's discharge, again stating that the accountant's report showed $1,400 missing while Mr. DeFries was receiving utility payments.

Within the time period set by Ordinance No. 1992–3, Mr. Fugitt sent the Town notice of appeal from the Board's decision. He also requested an opportunity· to review and copy documents related to the charges against Mr. DeFries, including utility ledgers, account

statements and bank records. In response, the Board of Trustees selected a separate Appeal Board. Also, Mr. Bonnell began collecting the requested documents and later produced copies.

On September 8, 1992, at a regular meeting of the Board of Trustees, a group of town residents presented a statement of grievances and asked the Board members to resign. Although the list of grievances is not part of the court record, meeting minutes reflect that the group's spokesman complained about the way Mr. DeFries' discipline had been handled. On this and other occasions, the charges against Mr. DeFries were discussed in Board meetings attended by the public. According to Mrs. DeFries, some Board members and Mr. Bonnell made comments that implicitly accused her husband of taking the missing money.

On October 29, Mr. Bonnell notified Mr. Fugitt that the appeal hearing was set for November 6 and provided a list of witnesses and exhibits that would be presented. By November 16, however, all of the Town's trustees and officers had resigned. The Appeal Board finally held Mr. DeFries' hearing on January 13, 1993. The Appeal Board did not issue findings about whether Mr. De-Fries' dismissal was justified but recommended further investigation of the matter. The Board of Trustees never acted on that recommendation. But in April 1994, town residents were advised in a newsletter that an extended investigation by federal, state and county authorities found no money missing and no wrongdoing by Mr. DeFries.

Plaintiff filed this suit in July 1994. He claims under 42 U.S.C. § 1983 that defendants violated his fourteenth amendment rights to procedural and substantive due process and deprived him of both liberty and property interests. Under state law, plaintiff claims that his discharge violated public policy and breached an employment contract arising from the Town's disciplinary procedures. Defendants have moved for summary judgment on the grounds that plaintiff can prove no federal claim and his state law claims fail on the merits and for lack of subject matter jurisdiction.

## SUMMARY JUDGMENT STANDARD

██ Summary judgment is appropriate if the pleadings, affidavits, depositions and other evidence on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, a court must view all facts and inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). However, only genuine disputes over facts that might affect the outcome of the case under the governing substantive law preclude the entry of summary judgment. *Id.* at 248, 106 S.Ct. at 2510. "[A] trial judge must bear in mind the actual quantum and quality of proof necessary to support liability" and must determine whether the proffered evidence is sufficient to allow a reasonable jury to find liability. *Id.* at 254, 106 S.Ct. at 2513. If the evidence leads to only one reasonable conclusion, summary judgment is proper. *Id.* at 250, 106 S.Ct. at 2511.

██ A party's failure to make a sufficient showing on an essential element of his case renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Palermo v. First Nat'l Bank & Trust Co.*, 894 F.2d 363, 367 (10th Cir.1990). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. A movant need only point out that there is an absence of evidence to support an essential element of his opponent's case. *Id.* at 325, 106 S.Ct. at 2553–54. Then, the non-movant must go beyond the pleadings and set forth specific facts demonstrating that there is a triable issue. *Id.* at 324, 106 S.Ct. at 2553; *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; Fed.R.Civ.P. 56(e).

## PROPERTY INTEREST AND PROCEDURAL DUE PROCESS

■ Plaintiff claims he had a property interest in continued employment with the Town that could not be taken away without due process. Two Supreme Court decisions circumscribe this procedural due process claim. In *Board of Regents v. Roth*, 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–10, 33 L.Ed.2d 548 (1972), the Court ruled that a tenured public employee has a property interest in continued employment. This property interest is not derived from the Constitution, but is created and defined "by existing rules or understandings that stem from an independent source such as state law...." *Id.* at 577, 92 S.Ct. at 2709. "A public employee has a property interest in continued employment if under state law that employee has a 'legitimate claim of entitlement' to—not merely a 'unilateral expectation' of—continued employment." *Carnes v. Parker*, 922 F.2d 1506, 1510 (10th Cir.1991).

■ In *Cleveland Board of Educ. v. Loudermill*, 470 U.S. 532, 542–43, 105 S.Ct. 1487, 1493–94, 84 L.Ed.2d 494 (1985), the Supreme Court held that a public employee who has a property interest in continued employment must receive some type of pretermination hearing before he is deprived of his position. "The tenured public employee is entitled to oral or written notice of charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546, 105 S.Ct. at 1495. Also, a full-blown adversarial post-termination hearing is required, unless that type of hearing occurs before termination. *Id.* at 547 n. 12, 105 S.Ct. at 1496 n. 12; *see also Calhoun v. Gaines*, 982 F.2d 1470, 1476 (10th Cir.1992).

The threshold question then is whether Mr. DeFries had a property interest in continued employment with the Town. He claims entitlement under a statute that protects a town clerk from dismissal except for cause and under Ordinance No. 1992–3, which permits an employee to be discharged for certain reasons and "any other just cause." Plaintiff says he was a town clerk because the Board of Trustees assigned him, and he performed, all duties of that statutory office. Thus, according to plaintiff, his service to the Town was protected by statute, even though the Town did not give him the proper title.

The Town is governed by the Oklahoma Municipal Code, Okla.Stat. tit. 11, §§ 1–101 *et seq.*, and in particular, Article 12 of the Code. Section 12–114 provides that dismissals "shall be made solely for the good of the service" and creates essentially an "at will" relationship between a town and its employees. *Lane v. Town of Dover*, 761 F.Supp. 768, 771 (W.D.Okla.), *aff'd*, 951 F.2d 291 (10th Cir.1991). An "appointive officer", however, may be removed only for cause. Section 12–109 provides that a town clerk shall be a town officer and perform certain duties.

The Court will assume that Mr. DeFries performed all the duties statutorily required of a town clerk, as he argues.[1] That fact alone does not make him town clerk. Mr. DeFries admits that he lacked a mandatory legal qualification to be a town officer, namely, residency. *See* Okla.Stat. tit. 11, § 8–101, 8–109(E); Okla. Op. Att'y Gen. 76–260. Thus, Mr. DeFries can claim to be a town officer only if he proves he was a *de facto* one.

■ The Oklahoma Supreme Court has held that a *de facto* officer of a municipality is a person who, although not qualified to hold office, exercises the functions of a legal and existing office under color of title or by reason of prior election to that office. *Ajax Contractors, Inc. v. Myatt*, 424 P.2d 30, 33–34 (Okla.1967); *Franks v. Ponca City*, 170 Okl. 134, 38 P.2d 912, 913 (1934). The facts of this case do not bring Mr. DeFries within that definition. When he was assigned the duties of a town clerk, the Town had no such office; the separate offices of town clerk and town treasurer had been consolidated into one office of town clerk-treasurer. The Code expressly authorized this consolidation when

---

1. Plaintiff's job responsibilities appear to consist more of activities required of a town treasurer than a town clerk. *See* Okla.Stat. tit. 11, § 12– 110 (treasurer maintains accounts and books and daily deposits funds received for the town).

a vacancy occurred in one of the offices. *See* Okla.Stat. tit. 11 § 12–112.

Moreover, Mr. DeFries was not acting under color of title to the office of town clerk-treasurer because he was neither elected nor appointed to fill it. The record shows that the only appointment made after the town clerk resigned was appointment of the elected town treasurer to the consolidated office. The Board merely assigned Mr. DeFries to perform the necessary tasks and voted to pay him for the extra work.[2] Mr. DeFries presents no authority, and the Court has found none, for the proposition that hiring an employee to do clerical duties makes him town clerk. The Court does not believe the Oklahoma Supreme Court would so hold. In *Young v. Town of Morris*, 47 Okl. 743, 150 P. 684 (1915), a town marshal with consent of the town's board of trustees appointed a deputy to perform his duties and then stopped devoting personal attention to the office. The supreme court held that these facts constituted grounds for the town marshal's removal but did not automatically remove him from office or create a vacancy. *Id.* 150 P. at 685–86.

■ Even if Mr. DeFries could raise a genuine issue about whether he was *de facto* town clerk, research has revealed no support for his bare assertion that a *de facto* town clerk would be entitled to statutory protection from removal. The Oklahoma Supreme Court has held simply that a *de facto* officer who has acted in good faith is entitled to the compensation due the office if there is no adverse claimant or *de jure* officer. *Franks*, 38 P.2d at 913. It defies common sense to think that a person who has no legal right to hold a town office might nevertheless have a legal right to keep it.

In short, all this record shows is that Mr. DeFries was hired to perform the duties of an office that another person held by lawful appointment. This being so, no juror could reasonably find that Mr. DeFries was a *de facto* town clerk or, if he was, that he had any statutory right to continued employment in that capacity.

■ Just as the Oklahoma Municipal Code provides Mr. DeFries with no legitimate claim of entitlement to continued employment, Ordinance No. 1992–3 creates no such claim. This Court has previously held that a municipal ordinance specifying grounds for discharge does not give town employees under a board of trustees government a legitimate expectation that they will only be discharged for cause. *See Matlock v. Town of Harrah*, 719 F.Supp. 1523, 1528 (W.D.Okla.1989), *rev'd in part on other grounds*, 930 F.2d 34 (table), 1991 WL 47115 (10th Cir.1991). Plaintiff has not convinced the Court that its prior ruling was wrong, and therefore that rule will be followed here.

■ Section 12–114, which mandates the "good of the service" standard for dismissals, authorizes a town's board of trustees to establish a merit system and regulate personnel matters.[3] By its terms, the statute permits a board of trustees to control some personnel matters, but it does not expressly authorize the board to alter the essential nature of the town's relationship with its employees. The Court declines to expand the statute beyond its plain words and to confer power on a board of trustees to override the enabling statute. To do so would nullify that portion of the statute that mandates the "good of the service" standard and would violate the rule of statutory construction that requires all provisions of a statute to be given effect when possible. Therefore, the Court finds that Mr. DeFries did not have a property interest in continued employment with the Town.

2. Although Mr. DeFries argues that he was appointed town clerk, he bases this argument solely on the fact that he was assigned a town clerk's duties.

3. Section 12–114 provides in full as follows:
Appointments and promotions in the service of a statutory town board of trustees government shall be made solely on the basis of merit and fitness; and removals, demotions, suspensions, and layoffs shall be made solely for the good of the service. The board by ordinance may establish a merit system and provide for its organization and functioning, and provide for personnel administration and regulation of personnel matters. The board of trustees may remove for cause any appointive officer by a majority vote of all its members.

*SUBSTANTIVE DUE PROCESS*

■ Defendants contend that this case involves no fundamental right or any other right protected by substantive due process. Plaintiff claims, however, that substantive due process means freedom from arbitrary and capricious actions by public officials. According to plaintiff, evidence suggests that the Board of Trustees arbitrarily found him guilty of malfeasance because Mayor Moody was biased against him and motivated by ill-will.

Mr. DeFries seems to argue that he had a right to substantive due process independent from any right to procedural due process. However, he presents no case law holding that a right to substantive due process can arise from public employment in which the employee has no property interest. Such a proposition appears contrary to *Archuleta v. Colorado Dept. of Institutions*, 936 F.2d 483, 491 (10th Cir.1991). There, the Tenth Circuit assumed that a property interest in employment sufficient to trigger procedural due process should also receive substantive due process protection, but noted uncertainty about whether even such property is entitled to substantive guarantees. *Id.* at 489 n. 6; *see also McGhee v. Draper*, 564 F.2d 902, 912–13 (10th Cir.1977) (arbitrary termination of nontenured public employee creates no substantive due process claim). The Court concludes that because Mr. DeFries did not have a property interest in continued employment with the Town, no substantive due process claim can arise from his discharge. In any event, Mr. DeFries lacks sufficient evidence to prove that his termination was motivated by ill-will. *See* footnote 6 *infra*.

## LIBERTY INTEREST AND PROCEDURAL DUE PROCESS

Defendants contend that Mr. DeFries cannot prevail on his liberty interest claim because he lacks evidence to show he was deprived of a liberty interest and because the disciplinary process provided under Ordinance No. 1992–3 adequately protected that interest. Plaintiff has responded with testimony relating comments allegedly made about him in public meetings of the Board of Trustees. He also challenges the adequacy of the hearings he received. He complains that the hearing tribunals were biased and that the Appeal Board recommended further investigation but nothing was done.

■ In the context of public employment, a liberty interest may arise when "a person's 'good name, reputation, honor, or integrity' is at stake" and dismissal imposes a stigma that forecloses "his freedom to take advantage of other employment opportunities." *Roth*, 408 U.S. at 573, 92 S.Ct. at 2707. The Tenth Circuit has compiled from *Roth*'s progeny a succinct statement of what creates a liberty interest:

> When a public employer takes action to terminate an employee based upon a public statement of unfounded charges of dishonesty or immorality that might seriously damage the employee's standing or associations in the community and foreclose the employee's freedom to take advantage of future employment opportunities, a claim for relief is created.

*Melton v. City of Oklahoma City*, 928 F.2d 920, 927 (10th Cir.1991) (en banc); *see Codd v. Velger*, 429 U.S. 624, 627, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977); *Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976); *Paul v. Davis*, 424 U.S. 693, 710, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976). Criticism of a person's job performance, including charges of insubordination, neglect of duties or unreliability, do not connote dishonesty or immorality and are insufficient to create a liberty interest. *Hicks v. City of Watonga*, 942 F.2d 737, 746 (10th Cir.1991). However, a plaintiff "does not have to prove *actual* denial of a job opportunity.... [He need only] prove termination based upon a publicized false charge of sufficient opprobrium that would make [him] an unlikely candidate for employment by a future employer." *Melton*, 928 F.2d at 927 n. 11 (emphasis original).

■ In this case, defendants initially conceded that whether stigmatizing remarks were made about Mr. DeFries was "necessarily a question of fact at this point", but in their reply brief, they argue that plaintiff has adduced evidence of nothing more than job

criticism. Having reviewed the public statements reportedly made about Mr. DeFries, the Court must disagree with defendants' characterization of the evidence. Statements to the effect that money entrusted to Mr. DeFries was "missing", "didn't make it to the bank" and disappeared on the way to the bank, can reasonably be read to say that Mr. DeFries took the money. Clearly, public accusations that plaintiff embezzled town funds, if made in connection with his dismissal, would implicate a liberty interest.

 When a nontenured public employee has been stigmatized by false information published in the course of terminating his employment, he must be given an opportunity to refute the charges and restore his good name. *Codd,* 429 U.S. at 627, 97 S.Ct. at 884; *Roth,* 408 U.S. at 573 n. 12, 92 S.Ct. at 2707 n. 12; *Hicks,* 942 F.2d at 745; *Melton,* 928 F.2d at 930. This name-clearing hearing need not concern whether the charges, if true, were an adequate reason for termination but only whether the accusations were in fact true. *Codd,* 429 U.S. at 628, 97 S.Ct. at 884. Although the requisite components of the hearing are unclear, it is sufficient to provide the same process due when a

property interest is at stake. *See Parker v. Housing Authority,* No. 92–3136, 1993 WL 207441 (10th Cir. June 9, 1993); *Melton,* 928 F.2d at 939–40 (Logan, J., dissenting); *Koerpel v. Heckler,* 797 F.2d 858, 868–69 (10th Cir.1986); *Miller v. City of Mission,* 705 F.2d 368, 372 (10th Cir.1983); *McGhee v. Draper,* 564 F.2d 902, 911–12 (10th Cir.1977). Thus, the employee must receive notice of the charges a reasonable time before the hearing, an opportunity to confront and cross-examine witnesses, an impartial tribunal, and a statement of reasons for the decision. If this hearing does not occur before termination, an informal pretermination process must inform the employee of the charges and evidence against him and give him an opportunity to respond.

 Based on the record presented, the Court cannot hold as a matter of law that Mr. DeFries received a meaningful opportunity to clear his name. The Court finds no constitutional infirmity in the pretermination procedures provided.[4] Also, plaintiff has adduced insufficient evidence to impugn Mayor Moody or any other member of the hearing tribunals.[5] Moreover, Mr. DeFries was well-

---

4. Plaintiff's suspension with pay raised no due process concerns. *Hicks v. City of Watonga,* 942 F.2d 737, 746 n. 4 (10th Cir.1991). Before discharge, he received written notice that he might be dismissed because funds entrusted to him were unaccounted for, according to an independent accountant's report that was provided. Plaintiff with counsel attended the meeting where discipline was discussed, heard first-hand the Town's story, and presented his side. The Constitution requires no more.

5. There is a presumption of honesty and integrity in those serving as adjudicators that must be overcome by evidence of actual bias. *Hicks,* 942 F.2d at 747. Involvement of tribunal members in earlier proceedings is insufficient; there must be evidence of personal animosity or conflict of interest or evidence that a tribunal member had formed an opinion before the hearing. *Id.* at 747–48. One cannot infer that tribunal members will be biased merely from their association with another official who is biased. *Id.* at 748. But the presence of one biased member taints the entire tribunal and violates due process. *Id.*

In this case, Mr. DeFries' evidence that Mayor Moody was biased is his own affidavit testimony. He states that during the pretermination hearing, "Mayor Moody indicated that she had examined the books and records and was convinced money was missing." According to him, these state-

ments show she had already decided he should be fired. Matt DeFries Affidavit at 2, ¶ 10. He also gives his view of the reasons for his dismissal, including that Mayor Moody and the Board needed a scapegoat, Mayor Moody disapproved of his seeking to become a certified law enforcement officer without her permission, Mayor Moody and the Board believed rumors that he had used Town funds to help a former employee illegally purchase weapons, and Mayor Moody had a "big problem" with his friendship with that former employee. Affidavit at 3, ¶ 16.

Mr. DeFries' speculative personal beliefs about whether Mayor Moody approved of his career choices and friends are insufficient as a matter of law to establish that the mayor was biased. He has adduced no evidence or facts from which one could reasonably infer that Mayor Moody bore personal animosity toward him. *See, e.g., Hicks,* 942 F.2d at 750 (evidence of personal conflict between city councilwoman and policeman that began when he issued traffic citations to her and her son, she allegedly made harassing comments, and he filed a grievance against her, created a factual issue about her possible animosity.) The comments Mayor Moody allegedly made at the pretermination meeting about the weight of the evidence reflect no more than the fact she served as both investigator and factfinder. Her dual role created no constitutional risk

informed of the Town's charges and evidence before a post-termination adversarial hearing in which he, represented by counsel, had an opportunity to present evidence and cross-examine witnesses. Unfortunately, however, this adversarial hearing resolved nothing.

The Appeal Board apparently issued no factual findings but, at most, merely recommended further investigation. The only proof of a decision by the Appeal Board is plaintiff's evidence that the Board of Trustees received a letter that recommended revision of Ordinance No. 1992–3 to add progressive discipline, enclosed information, and bore an added handwritten notation:

> Additional information has been called to my attention that the trustees might want to look at.

> I suggest further investigation on the part of the trustees.

> Our decision as a hearing Committee is strictly advisory and ultimately the decision is yours as to whither (sic) Matt DeFries dismissal was justified.

> /s/ Harley K. Bromley

Plaintiff's Exhibit I (emphasis in original). These remarks do not show that the Appeal Board reached any conclusion about the evidence against Mr. DeFries. The suggestion of further investigation seems to reflect the writer's personal view and to be based on information received outside the appeal hearing. Even if this suggestion was a recommendation issued by the Appeal Board as a result of the hearing, there is no evidence that the Board of Trustees ever acted on, or even considered, it.

In short, all that appears from this record is that an adversarial hearing took place. The record does not show that the tribunal who heard the witnesses and evidence performed its factfinding duty or that the decisionmakers reconsidered their prior judgment in light of that evidence. It would be a meaningless right to receive an adversarial hearing unless the evidence presented was then evaluated and some judgment made.[6] Therefore, although the Court is reluctant to interfere with the disciplinary decision of a municipal body duly elected to make it, the Court cannot on this record find that Mr. DeFries received a constitutionally adequate hearing in which to refute accusations of dishonesty that are implicit in public statements allegedly made about his termination. For this reason, defendants' motion regarding plaintiff's liberty interest claim will be denied.

## STATE LAW CLAIMS

▪ Similarly, with respect to plaintiff's breach of contract claim, issues of material fact remain to be decided. Although the Court has determined that Ordinance No. 1992–3 did not give plaintiff a right to be terminated only for cause, it may have created an implied contractual right to the procedures set forth in the ordinance. *See Carnes*, 922 F.2d at 1511; *Breshears v. Moore*, 792 P.2d 91, 93–94 (Okla.Ct.App. 1990).

As explained above, it is unclear from the evidence submitted that Mr. DeFries received all the procedures mandated by Ordinance No. 1992–3. For example, Section 1–606 required the Appeal Board to prepare "a

---

of bias. *See id.* at 748 (citing *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975)).

Evidence that defendant Ricky Smith and Mr. Bonnell commented on plaintiff's guilt in September 1992 do not prove bias by the Board of Trustees. Statements made after plaintiff's termination do not show that the Board initially prejudged his case, and Mr. Bonnell was not a decisionmaker. Similarly, Mr. DeFries' testimony that the Appeal Board was composed of Mayor Moody's "friends and supporters" is insufficient to undermine the integrity of that tribunal. Therefore, at this point, any claim that the process plaintiff received was unconstitutionally biased must fail.

6. Plaintiff also suggests that the review process was defective because the Appeal Board had no authority to reverse his termination but could only make a recommendation to the Board of Trustees. Research has revealed only one controlling case on this issue, and it is unhelpful because its facts are dissimilar. *See Calhoun*, 982 F.2d at 1472 n. 1 (review panel that was not officially recognized or empowered to make any official determination could not provide constitutional post-termination process). However, Mr. DeFries' argument has a hollow ring. No doubt, if the Board of Trustees had presided over the post-termination process, he would complain that the review panel had prejudged his case.

written report of findings and recommendations", including "a summary of the facts determined at the hearing relating to the specific allegations" and "a specific recommendation concerning the disciplinary or other action to be taken." Under Section 1–607, the Board of Trustees was required to act on the Appeal Board's recommendation "at the next regular or special council meeting." The latter section also required that any action taken by the Board of Trustees on the recommendation "be made in a public meeting with a vote of each member publicly cast and recorded." The evidence presented does not show beyond question that Mr. DeFries received the benefit of these procedures.

As to plaintiff's public policy tort claim, the Court also declines to grant summary judgment for all defendants at this time. Plaintiff concedes that the individual defendants are immune from suit under the Oklahoma Governmental Tort Claims Act. *See* Okla.Stat. tit. 51, § 152.1. However, he disputes the Town's contention that no clear mandate of public policy was violated by his discharge. *See Burk v. K–Mart Corp.,* 770 P.2d 24, 29 (Okla.1989). Mr. DeFries relies on a criminal statute that prohibits making a false crime report, Okla.Stat. tit. 21, § 589, and argues that the Town provided false information to several law enforcement agencies in connection with his termination. In addition, it seems clear to the Court that a public employee's constitutional right to due process for deprivation of a liberty interest is established by the Oklahoma Constitution, as well as the federal Constitution. *See* Okla. Const. art. 2, § 7; *see also Hall v. O'Keefe,* 617 P.2d 196, 200 (Okla.1980). Thus, plaintiff's liberty interest-due process claim, if proved, might give rise to both a state law public policy tort claim and a Section 1983 claim.

## *DAMAGES*

Also left for adjudication, of course, is what amount of damages would compensate plaintiff for any constitutional violation that occurred. Assume that a liberty interest was created and that there was a constitutional defect in the disciplinary process. Mr. DeFries may recover only nominal damages if it is determined that curing the defect would not have changed the result, that is, would not have cleared his name. *Carey v. Piphus,* 435 U.S. 247, 266–67, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978). Moreover, the amount of any actual or compensatory damages awarded could not extend beyond the date that the Town voluntarily restored Mr. DeFries good name and reputation with a public apology. Finally, if Mr. DeFries prevails, the amount of attorney's fees awarded must take into account his measure of success. *Farrar v. Hobby,* —— U.S. ——, —— – ——, 113 S.Ct. 566, 574–75, 121 L.Ed.2d 494, 505–06 (1992); *Koopman v. Water Dist. No. 1,* 41 F.3d 1417 (10th Cir. 1994).

## CONCLUSION

In summary, defendants are entitled to summary judgment on plaintiff's claim that he was deprived of a property interest in continued employment with the Town without procedural due process and his substantive due process claim. Also, the individual defendants are entitled to summary judgement on all state law claims. However, there are genuine disputes of material facts relevant to plaintiff's claim of deprivation of a liberty interest without due process and his state law claims against the Town. Therefore, defendants' motion for summary judgment is GRANTED in part and DENIED in part.

It is so ordered.