Dear Honorable Reynolds:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. Are there any applicable constitutional, statutory or common law methods by which a statewide elected official may be suspended from office, voluntarily or involuntarily, prior to an actual conviction of a crime?
 2. If the answer to number 1 is "yes," would the officeholder be entitled to keep the officeholder's statutory salary and/or continue to accrue credit toward the officeholder's retirement in the Oklahoma Public Employees Retirement System ("OPERS")?
 3. May a statewide elected official voluntarily "step aside" or "suspend" himself or herself with or without pay, after being charged with a crime but prior to conviction, without abandoning the office or being guilty of neglecting the duties of office?
 4. If the answer to number 3 is "yes," would the officeholder be entitled to continue to accrue credit toward the officeholder's OPERS retirement?
You ask a series of questions relating to the status of a statewide elected official's office and retirement benefits during the time period between when the officeholder is charged with a crime and the officeholder is actually convicted. Your questions assume the statewide elected official is not a district judge and is, therefore, not subject to the specific provisions regarding removal of district judges. *Page 2 
Generally, suspension or forfeiture of office for criminal wrongdoing is governed by OKLA. CONST. art. VIII, § 1 and 51 O.S. 2001, § 24.1(A). The applicable part of the constitutional provision states:
 The Governor and other elective state officers, including the Justices of the Supreme Court, shall be liable and subject to impeachment for wilful neglect of duty, corruption in office, habitual drunkenness, incompetency, or any offense involving moral turpitude committed while in office. All elected state officers, including Justices of the Supreme Court and Judges of the Court of Criminal Appeals, shall be automatically suspended from office upon their being declared guilty of a felony by a court of competent jurisdiction and their pay and allowances, otherwise payable to such official, shall be withheld during the period of such suspension.
Id. (emphasis added). The statutory provision relating to suspension or forfeiture of office, 51 O.S. 2001, § 24.1[51-24.1](A), provides:
 A. Any elected or appointed state or county officer or employee who, during the term for which he or she was elected or appointed, is, or has been, found guilty by a trial court of a felony in a state or federal court of competent jurisdiction shall be automatically suspended from said office or employment. The Governor shall appoint an interim successor to serve during the period of suspension of any county commissioner or any state officer other than a member of the State Legislature. A vacancy created by the suspension of a member of the State Legislature shall be filled as provided in Section 20 of Article V of the Oklahoma Constitution. A vacancy created by the suspension of a county officer other than a county commissioner shall be filled as provided by Section 10 of this title. In the event any elected or appointed state or county officer or employee who, during the term for which he or she was elected or appointed, pleads guilty or nolo contendere to a felony or any offense involving a violation of his or her official oath in a state or federal court of competent jurisdiction, he or she shall, immediately upon the entry of said plea, forfeit said office or employment. Any such officer or employee upon final conviction of, or pleading guilty or nolo contendere to, a felony in a state or federal court of competent jurisdiction shall vacate such office or employment and if such felony or other offense violates his or her oath of office shall forfeit all benefits of said office or employment, including, but not limited to, retirement benefits provided by law, however, the forfeiture of retirement benefits shall not occur if any such officer or employee received a deferred sentence, but retirement benefits shall not commence prior to completion of the deferred sentence; provided, however, that such forfeiture of retirement benefits shall not include such officer's or employee's contributions to the retirement system or retirement benefits that are vested on the effective date of this act. Any claims for payment of salary or wages, or any claims for *Page 3 
payment of any other benefits, to any such officer or employee suspended from or forfeiting his or her office or employment shall be rejected by the proper authority. Such suspension or forfeiture shall continue until such time as said conviction or guilty plea is reversed by the highest appellate court to which said office or employee may appeal. The attorney responsible for prosecuting such elected or appointed state or county officers or employees shall notify the retirement system in which such officer or employee is enrolled of the forfeiture of such officer's or employee's retirement benefits.
Id. (emphasis added). As stated in Nida v. State ex. rel. OklahomaPublic Employees Retirement Systems Board of Trustees, 99 P.3d 1224,1227 (Okla.Civ.App. 2004), "the purpose of § 24.1(A) is to ensure that public officials who commit serious criminal offenses, particularly those which violate their oath of office, lose their rights both to serve further and to the benefits of office."
 I. THERE ARE NO CONSTITUTIONAL, STATUTORY OR COMMON LAWMETHODS BY WHICH A STATEWIDE ELECTED OFFICIAL MAY BE SUSPENDED FROM OFFICE PRIOR TO AN ACTUAL CONVICTION OF A CRIME.
You first ask whether there are any applicable constitutional, statutory, or common law methods by which a statewide elected official may be suspended from office, voluntarily or involuntarily, prior to an actual conviction of a crime. The suspension of statewide elected officials for criminal wrongdoing is governed by the two provisions cited above. Both provisions require automatic suspension from office when a statewide elected official is found guilty of a felony. The constitutional provision, Okla. Const. art. VIII, § 1, refers to being "declared guilty of a felony by a court of competent jurisdiction." The statutory provision refers to an elected official being "found guilty by a trial court of a felony in a state or federal court of competent jurisdiction." 51 O.S. 2001, § 24.1[51-24.1](A). Section 24.1(A) also provides than an elected official who "pleads guilty or nolo contendere to a felony or any offense involving a violation of his or her official oath in a state or federal court of competent jurisdiction" shall forfeit said office or employment. Id. That statute contains a specific provision for the payment of retirement benefits for those elected officials who have received a deferred sentence. Id. Neither of these provisions provides for formal suspension from office of a statewide elected official prior to an actual conviction.
Statutes exist which allow for suspension of certain state officials prior to conviction under specific circumstances. For instance, in cases where an officer is subject to removal,[1] specific provisions exist *Page 4 
to allow the complainant to ask for suspension of the officer pending investigation. 22 O.S. 2001, § 1195[22-1195](1). This statute at Section 1195(2) also allows a "county officer, other than a county commissioner, against whom a complaint for removal has been filed," to voluntarily suspend himself or herself from office. The provisions governing removal of judges, OKLA. CONST. art. VII-A, § 4, allow the Trial Division of the Court on the Judiciary to suspend a judge from the exercise of his or her office when a petition for removal has been filed. OKLA. CONST. art. VII-A, § 4(d). However, these statutes do not apply to a statewide elected official subject to impeachment as referenced in your question. Thus, there are no constitutional or statutory methods for voluntary or involuntary suspension of statewide elected officials prior to conviction of a crime. Likewise, we find no common law methods by which a statewide elected official may be voluntarily or involuntarily suspended from office.[2]
To answer your first question, there are no constitutional, statutory or common law methods by which a statewide elected official may be formally suspended from office, either voluntarily or involuntarily, prior to actual conviction of a crime.
You next ask whether, if the answer to your first question is "yes," a statewide elected officer would be entitled to keep his or her statutory salary and/or continue to accrue credit toward his or her OPERS retirement. As we have not answered "yes" to your first question, the second question is moot.
 II. AN ELECTED STATEWIDE OFFICIAL MAY VOLUNTARILY "STEP ASIDE"OR "SUSPEND" HIMSELF OR HERSELF FROM OFFICE BUT WILL CONTINUETO RECEIVE SALARY AND BENEFITS. WHETHER THE OFFICEHOLDER'S CONDUCT CONSTITUTES ABANDONMENT OF THE OFFICE IS A QUESTION OFFACT.
You also ask whether an elected statewide official may voluntarily "step aside" or "suspend" himself or herself from office, with or without pay, without abandoning his or her office or being guilty of neglecting the duties of office. As discussed above, there are no specific provisions allowing a statewide elected official to formally suspend himself or herself from office. We interpret your question as referring to an informal suspension or as you say, "stepping aside." *Page 5 
Case law teaches us that a duly elected officer may engage in conduct which amounts to a failure to give all the officeholder's personal attention to the office without abandoning that office. An elected official may also voluntarily abandon a public office to which he or she has been elected. Bunch v. Bd. of Comm'rs, 229 P. 185, 186 (Okla. 1924);Young v. Town of Morris, 150 P. 684, 685 (Okla. 1915).
The type of conduct on the part of a statewide elected official which may constitute abandonment of office was considered by the Supreme Court in Young. Frank Young was the elected marshal of the town of Morris during August and September of 1911. Id. at 685. In June of that year Young received consent of the board of trustees of the town to confirm the appointment of a man named Hornbeck as deputy marshal to perform the duties of the marshal but receive no salary other than that paid him by Young. During August and September, Young worked as a carpenter in the construction of a house. This fact prompted a claim from the town of Morris that Young had abandoned his office and was not entitled to salary. Id.
The Supreme Court rejected the town's claim, finding:
 That [Young] did not perform the duties of town marshal during the larger part of said months, and that most of said time he was engaged in the carpentry trade, did not prove an abandonment of the office, at least not when taken in connection with the fact that Hornbeck was appointed deputy without pay other than that received from Young.
Id. The court concluded that Young still retained the office of marshal and was entitled to the salary. Id. at 686. The court noted that the "salary of an official position belongs to the officer occupying such position . . . and does not depend upon his performance of the duties of the office." Id. The court stated:
 The right of an officer to salary is such only as is prescribed by statute, and while he holds the office, such right is in no wise impaired by his occasional or protracted absence from his office, or the neglect of his duties. Such derelictions find their correction in the power of removal, impeachment, and punishment, provided by law.
Id.
The court further discussed that even if Young's conduct constituted that which would subject Young to removal, "it did not of itself, without any action of the proper authorities, remove him from the office to which he was elected." Id. at 685. The court stated:
 It is the purpose of the law of this state that the incumbent of an office shall devote his personal attention to the duties of the office to which he is elected or appointed. Article 2, § 11, Const.[3] But this does not mean that he shall lose his title to office because he may be absent or away for a short period of time, for any reason, and shall *Page 6 
not, during such period of time, personally give all of his time and attention to the duties of his office. That he does not fulfill the mandate of the Constitution would serve as grounds for removal, but would not ipso facto remove him.
Id. (footnote added). This holding that facts supporting abandonment do not automatically remove one from office was recognized by the United States District Court for the Western District in DeFries v. Town ofWashington, 875 F. Supp. 756, 763 (W.D. Okla. 1995). See also Hurdv. Freeland, 442 P.2d 344, 347 (Okla. 1966) (failing to attend board meeting did not constitute abandonment where there was no intention on the part of the board member to abandon the office); Wimberly v. Deacon,144 P.2d 447, 454 (Okla. 1943) (failing to give personal attention to duties of an office "are generally held not to work an automatic vacation of the office . . . but to merely afford a ground for removal"); Webb v.City of Hugo, 37 P.2d 621, 623 (Okla. 1934) ("temporary absence or incapacity to perform the duties of an office does not forfeit the right of the holder of the title thereof to the salary fixed and prescribed by law").
You ask about suspension with pay and suspension without pay. As we have discussed above, while an elected official holds an office the right to salary is not impaired by his or her occasional or protracted absence from the office or the neglect of his or her duties. SeeYoung, 150 P. at 686. The salary belongs to the officer occupying the position as an incident to the office and does not depend upon the performance of the duties of the office. Id. Thus, there is no authority for an officer to voluntarily "step aside" or "suspend" himself without pay. As long as the officer holds the office, the pay belongs to the individual as the officeholder.[4] *Page 7 
This is not to say that an officer may not informally "suspend" himself with pay by turning over certain duties to others in the office.[5] In Webb, the mayor of the City of Hugo, W.L. Webb, died less than two months before the end of his term. Webb, 37 P.2d at 622. "For approximately eight months prior to his death he was physically incapacitated from performing the duties of mayor which included the duties of police judge." Id. The duties of the office were performed by R. B. Margrave, the president of the city council and Mr. Webb's salary was paid to Mr. Margrave. Upon Mr. Webb's death, his estate brought an action to recover from the city the salary for the eight months in question. Citing Young, 150 P. at 686, the court found for the estate, saying, "Under the doctrine well established by the above authorities the mere fact that Webb did not perform the duties of the office for a period of time did not deprive him of the right to the compensation fixed by law." Id. at 622. Although this case was decided in part on the interpretation of specific statutes governing the office of mayor, it nonetheless stands for the proposition that the salary of elected officials is not tied to the performance of duties. Even though a statewide elected official may informally "suspend" himself by turning over certain duties to others in the office, the officeholder continues to be entitled to the salary of the office.
Whether a statewide elected official's conduct constitutes abandonment of office is a question of fact dependent on the conduct and intent of that elected official. See Hurd, 442 P.2d at 347 ("Abandonment of office is a matter of intent or acquiescence."). Therefore, whether a statewide official abandons his or her office by "stepping aside" or "suspending" himself or herself from office is not a question which can be answered as a matter of law in an Attorney General's Opinion. See 74 O.S. 2001, § 18b[74-18b](A)(5).
We can state, however, that even if a statewide elected official commits conduct which may constitute abandonment, that in and of itself does not amount to forfeiture of office. A determination of neglect of duty must be made under the proper procedures before there is a vacancy in office. Young, 150 P. at 686. With regard to statewide elected officials, the proper method for removal is impeachment in accordance with OKLA. CONST. art, VIII, § 1 and 51 O.S. 2001, §§ 51-71.
You last ask, if the answer to the previous question is yes, is an officeholder entitled to continue to accrue credit toward his or her OPERS retirement?[6] Based on our discussion in response to the previous question, an officeholder who voluntarily "steps aside" or "suspends" himself or herself remains in office unless he or she is removed from office through the proper proceedings. An officeholder is entitled to continue to receive his or her salary and other benefits, including continuing to accrue credit toward retirement, while that officeholder remains in office.
It is, therefore, the official Opinion of the Attorney Generalthat: *Page 8 
 1. There are no constitutional, statutory or common law methods by which a statewide elected official may be suspended from office, voluntarily or involuntarily, prior to an actual conviction of a crime. OKLA. CONST. art. VIII, § 1; 51 O.S. 2001, § 24.1[51-24.1](A).
 2. A statewide elected official may commit actions which constitute "stepping aside" or informally "suspending" himself or herself with pay after being charged with a crime, but prior to conviction without abandoning his or her office. Whether the officeholder's actions constitute abandonment is a question of fact which cannot be answered in an Attorney General Opinion. 74 O.S. 2001, § 18b[ 74-18b](A)(5).
 3. Generally, a statewide elected official may not "step aside" or "suspend" himself or herself without pay as the salary of an elected official is incident to the office. Young v. Morris, 150 P. 684, 686 (Okla. 1915).
 4. The official's conduct, even if it were to constitute abandonment, does not ipso facto create a vacancy in office. Young v. Morris, 160 P. 684, 686 (Okla. 1915). The appropriate procedure for determining whether a statewide elected official's actions constitute abandonment of office is an impeachment proceeding. OKLA. CONST. art. VIII, § 1; 51 O.S. 2001, §§ 51-71[51-51-71].
 5. A statewide elected official is entitled to continue to accrue credit toward the official's OPERS retirement as long as the officeholder remains in office. Young v. Morris, 150 P. 684, 686 (Okla. 1915).
W. A. DREW EDMONDSON Attorney General of Oklahoma
SANDRA D. RINEHART Senior Assistant Attorney General
[1] "Any officer not subject to impeachment elected or appointed to any state" office may be removed for certain conduct. 22 O.S. 2001, § 1181[22-1181]. "The Governor and other elective state officers, including the Justices of the Supreme Court," are subject to impeachment. 51 O.S. 2001, § 51[51-51]. Thus, state elected officers are not subject to removal under the provision of Title 22. A state elected officer is also not subject to ouster pursuant to 51 O.S. 2001, §§ 91[51-91] through 105 as ouster applies to "[a]ll state officers not subject to impeachment under Section 1, Article 8 of the Constitution." Id. § 91.
[2] In State ex rel. Livingston v. Maxwell, 353 P.2d 690, 693 (Okla. 1960), the Supreme Court recognized that the power to appoint necessarily carries with it the power to suspend. As your question refers to elected rather than appointed officials this implied power is inapplicable.
[3] OKLA. CONST. art. II, § 11 provides, in part, that "[e]very person elected or appointed to any office or employment of trust or profit under the laws of the State, or under any ordinance of any municipality thereof, shall give personal attention to the duties of the office to which he is elected or appointed."
[4] An exception to this general rule exists for the office of Governor as the Oklahoma Constitution allows the Lieutenant Governor to receive the compensation of the Governor's office when the Governor's duties devolve upon the Lieutenant Governor pursuant to OKLA. CONST. art. VI, § 16.
[5] Statutes are in place with regard to specific statewide elected officeholders to govern situations where the elected official is unable to perform the duties of the office. For example, the First Assistant Attorney General may perform the duties of the Attorney General "[i]n the absence or disability of the Attorney General." 74 O.S. 2001, § 28[74-28]. Title 74 O.S. 2001, § 217[74-217] provides that an assistant shall perform the duties of the office of State Auditor and Inspector "[i]f by reason of sickness, absence or other cause, the State Auditor and Inspector is temporarily unable to perform the duties of his office."
[6] We note that an elected official may elect to participate in OPERS. The election to participate must be in writing and is irrevocable. 74 O.S.Supp. 2007, § 913.4[74-913.4](A). *Page 1